THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EARL WOODEN, Appellant.—Judgment, Supreme Court, Bronx County, rendered March 12, 1976, convicting defendant, after jury trial, of felony murder and sentencing him accordingly, is reversed, on the law, and the indictment is dismissed as against said defendant. In our view, the evidence was insufficient as a matter of law to establish guilt beyond a reasonable doubt. *(People v Ledwon,* 153 NY 10, 18.) Taking the evidence against the defendant at its worst, it appears that defendant was walking with the victim when three men approached them from behind; one of those three struck the victim on the head with an iron bar, resulting in the victim's death after a brief period; as the victim lay there, all four, including defendant, swarmed over the victim and the defendant was seen by one witness to put his hand in the victim's pocket and then put his hand in his own pocket. This may perhaps establish larceny or attempted larceny, indicating that the defendant saw no reason to resist the opportunity to steal from a helpless man. But there is nothing to show that the defendant had anything to do with the three men who came up behind him and the victim and struck the victim down. Furthermore, the only evidence that the defendant's hand went into the victim's pocket is that of one witness who was watching from a fifth floor window. There were various inconsistencies in this witness' testimony. The contemporaneous written police report stated that the victim, during his brief period of consciousness, said that he had been robbed by three men. None of the eyewitnesses are pillars of society. (Neither is the defendant.) The conviction cannot stand unless the evidence would justify a jury in finding beyond a reasonable doubt that the defendant was acting in concert with the three men who approached from behind and attacked the victim. In criminal cases "a mere *scintilla* or even *some proof* is not sufficient to warrant the submission of the case to the jury." *(People v Ledwon, supra,* p 18.) In the application of this rule, of course, each case must rest on its own facts and on the evidence in that case. We are unable to say that the evidence in this case was sufficient to warrant a conviction and a sentence of 25 years to life. Concur—Birns, Silverman and Markewich, JJ.; Lupiano, J. P., dissents in the following memorandum: After a jury trial, defendant was convicted of felony murder. The majority view the evidence as *insufficient as a matter of law* to establish guilt beyond a reasonable doubt and conclude that the conviction must be overturned and the indictment dismissed. I disagree. In the indictment, defendant, together with other individuals, was accused, *inter alia,* of the crime of murder in that they "acting in concert with each other * * * on or about July 16, 1974 while engaged in the commission of the crime of Robbery, and in the course of such crime, and in the furtherance thereof, and in immediate flight therefrom, caused the death of one * * * Mitchell not a participant in the crime, by striking him with a blunt instrument" At the conclusion of the jury trial, the court rendered a proper charge which concerned itself in part with the definition of "acting in concert" and the crime of felony murder. A narration of the evidence against the defendant follows: The victim, Mitchell, engaged in conversation with defendant, announced to others that he was going to the bank with his welfare check. Shortly thereafter, Mitchell, still in the company of defendant, was returning. Three men were walking behind. One of the three struck Mitchell's head, causing him to fall on the

ground. The foregoing was witnessed from a fifth-floor apartment window by a friend of the victim who testified that defendant was the first to search the victim's pockets, followed by the others. Four other witnesses, attracted in part by the cries of this witness, then approached the scene of the crime. The cumulative testimony of all the witnesses is, as the majority aptly observe, to the effect that "as the victim lay there, all four, including defendant, swarmed over the victim." As the four witnesses on the street approached, one of the assailants stated: "Oh, he's nothing but drunk. Leave him alone." All four—the three men who had followed the victim, and the defendant—then backed away from the scene of the crime, turned around and walked to an intersection and turned the corner. Two of the four witnesses on the street where the victim lay followed the assailants while the other two remained at the crime scene. The flight of the four alleged assailants was described by one of the witnesses who trailed them, as follows: "Defendant * * * was behind me as I went around the corner and he came up, passed me and went on up in front of the other three men and then proceeded on down Freeman Street * * * [defendant] was in the front. Two were together and the fourth man was slightly behind the other three." Thereafter, according to this witness, the four crossed Vyse Avenue, walked down between Vyse and Hoe Avenues, crossed Hoe Avenue and arrived at the intersection of Southern Boulevard and Freeman Street. The witness lost sight of two of the four and attracted police attention to the remaining two. When approached by the police, one of these two, according to the witness, "pointed to a man standing on the corner", which man again, according to the witness, was the defendant. The majority view this evidence as at best possibly establishing an intention on the part of defendant to commit larceny by failing "to resist the opportunity to steal from a helpless man" and conclude that "there is nothing to show that the defendant had anything to do with the three men who came up behind him and the victim and struck the victim down." This conclusion defies common sense and reason and fails to view the entire sequence of events as related above. Neither defendant nor his codefendant presented any witnesses. The Court of Appeals declared that "[i]n considering the weight of the evidence * * * we are to consider all the testimony and evidence in the record and in so doing may not close our eyes to questions of credibility which may have important bearing upon the question whether the evidence was of such weight as to justify the jury's determination of guilt beyond a reasonable doubt. This inquiry is not one in which we may usurp the function of the jury in determining the question of guilt or innocence and conclude upon our own review of the record that we would not feel justified in reaching the same determination. For we may not set aside the jury's verdict unless we conclude that it is against the weight of the evidence. Here all the witnesses are of the same character—thoroughly discreditable people * * * In such a situation justice requires that decision be left to the jury as the triers of the facts who have seen and heard the witnesses and are most competent, under proper instructions from the court, to determine questions of credibility. Such a situation is clearly distinguishable from a case where witnesses of bad character and ill repute are contradicted by persons of character and of standing in the community. *(People v Crum,* 272 N.Y. 348.) There the court concluded that the jury was not justified in finding the defendant guilty beyond a reasonable doubt. If the People's witnesses were telling the truth, as the jury found, the verdict was clearly supported by the weight of the evidence. If no errors or defects affect the verdict thus supported, we may not set it aside * * * *(People v Buchalter,* 289 N.Y. 181, 230.)" *(People v*

*Peller,* 291 NY 438, 446.) The common sense experience of life and human nature possessed by members of a petit jury is shared by their fellow men including those who don the judicial robe and preside over the judicial process whether at the trial or appellate level. That commonsense experience of life and human nature when focused upon the circumstances of the instant crime as narrated by the witnesses, impels the conclusion that the judgment convicting defendant of felony murder be affirmed.[1] It strains credulity to envision the three who followed the victim who was accompanied by defendant, permitting the defendant, after one of the three struck the victim down, to share freely in the spoils of the crime if he were merely an innocent bystander. Such magnanimity is belied by the nature of the crime and, again, by common sense. Further, when witnesses approached and gathered at the scene of the crime, some of whom knew the victim, the defendant, who, it appears, was at least an acquaintance if not a friend of the victim, did not disassociate himself from the three perpetrators and did not contradict the utterance of one of the three that the victim was merely drunk. Further, when the perpetrators retreated from the scene of the crime, they were accompanied by the defendant who did not remain behind to lend aid to the injured man. Further, defendant did not join in the pursuit of the perpetrators or in any manner whatsoever indicate that he was not of their company.[2] Reason and common sense, I reiterate, employed under the guidance of established legal principles governing appellate review, clearly warrant concluding that the judgment of the Supreme Court, Bronx County, rendered March 12, 1976, convicting defendant, after jury trial, of felony murder, should be affirmed.

---

1. The enumeration of hearsay evidence by the majority in the form of the written police report stating that the victim during brief consciousness said that he had been *robbed by three men,* fails to take note of further hearsay evidence in that at trial, a police officer testified that notwithstanding the report, the victim told him that four people had robbed him.

2. Even regarding the application of the circumstantial evidence rule, it has often been said that "[in] the end, it is a question whether common human experience would lead a reasonable man, putting his mind to it, to reject or accept the inferences asserted for the established facts" *(People v Wachowicz,* 22 NY2d 369, 372, cited in *People v Borrero,* 26 NY2d 430, 435, and in *People v Leach,* 57 AD2d 332).