Samuel H. Hofstadteb., J.
In these two appeals, consolidated for the purpose of disposition, defendants attack their convictions of fraudulently accosting (Revised Penal Law, § 165.30), rendered after trial.
*512 Section 165.30 provides that: “A person is guilty of fraudulent accosting when he accosts a person in a public place and, either at that time and place or subsequently in any place, he makes statements to such person of a sort commonly made or used in the perpetration of a known type of confidence game.”
The crime is alleged to have occurred on March 29, 1968, at 11:45 a.m. at West 138th Street and 7th Ávenue, New York. The information charged that the arresting officer was informed by Robert Moore, the person accosted, “ that the defendants did attempt to take, obtain and withhold from the informant’s possession a sum of money U. S. currency without authority.”
Defendants were first observed by members of the police pickpocket and confidence squad at 11 a.m. that morning at Lenox Avenue and 128th Street. Defendants were walking together until they reached 138th Street and 7th Avenue, where they separated.
Defendant Harris thereupon walked up to Mr. Moore, showed him a piece of paper and asked for directions to a hotel, where, Harris stated, a woman had promised to ‘ ‘ set him up ’ ’. Harris flashed a roll of money and told Mr. Moore that if he would show Harris where the hotel was located and accompany him there, Harris would make it “ worth his while ”.
After Mr. Moore replied that he did not know the hotel, codefendant Hackney approached and was asked the same question by Harris, who again flashed the roll of money. Defendant Hackney stated he knew where the hotel was and Harris and Hackney both walked away, looking back at Moore, who did not follow them.
The arresting officer detained defendants, interviewed Mr. Moore, and, upon learning of the statements made to him and the paper shown him by defendants, arrested appellants.
Search of their persons disclosed two ‘ ‘ Michigan rolls” of money (consisting of a roll of imitation money with a genuine dollar bill on the outside), one on Hackney’s person and.one on Harris’ person.
On the trial, the arresting officer, who qualified as an expert, testified that appellants were engaged in the “ handkerchief switch” confidence game, which commences, in the manner described above and terminates with the placing of the victim’s money in a handkerchief, which is then switched with a handerchief in which a “ Michigan roll ” belonging to one of the perpetrators is placed. The perpetrators then make off with the victim’s money.
Defendants argue that the statute is unconstitutionally vague; that it seeks to proscribe the utterance of words not otherwise *513 criminal without requiring any other manifestation of overt or criminal conduct. Respondent argues that the statute should be construed to prohibit the conduct specified only when it is accompanied by an intent to deprive another of his property and that section 155.05 of the Penal Law, which requires such intent generally in the definition of larceny, must be read together with section 165.30.
Section 165.30 is derived in part from subdivision 6 of section 722 of the former Penal Law, which defined, as the crime of disorderly conduct, accosting a person “ for the purpose of obtaining money or other property from said person by * * * confidence game ” “ with intent to provoke a breach of the peace, or whereby a breach of the peace may be occasioned ”. According to the commentary on the statute contained in McKinney’s Consolidated Laws of New York, Book 39: “ The former provision is merely in terms of following or accosting a person for swindling purposes (§ 722[6]), thus leaving a large question mark concerning the kind of conduct and proof required to establish the offense. The revised section, requiring statements ‘ of a sort commonly made or used in the perpetration of a known type of confidence game, ’ is obviously more specific and, in effect, calls for expert police testimony concerning confidence game techniques. A noteworthy feature of this statute is that which renders proof of such a statement sufficient regardless of whether it was made at the time and place of the original 1 accosting ’ ‘ or subsequently in any place. ’ The latter language recognizes and embraces numerous swindles in which the initial approach, ostensibly innocent from a conversational standpoint, lays the groundwork for execution and consummation of a confidence game at another time and place.” (Emphasis added.) Nonetheless, a reading of section 165.30 discloses an absence on its face of any requirement that the action proscribed be committed with a fraudulent purpose or fraudulent intent. Moreover, as it is not contained in the larceny article, but rather in the article defining miscellaneous other offenses relating to theft, no basis for reading the requirements of section 155.05 into it is apparent. As recognized in the commentary above quoted, and in view of the prior judicial recognition that the forms of swindles and confidence games are “ as various as the mind of man is suggestive,” (People v. Yonko, 115 N. Y. S. 2d 560), it would seem that the breadth of the new statute is as wide as the experience of the arresting officer.
Simply asking one where a certain hotel is located is clearly not criminal or antisocial in any manner. Possessing a “ Michi *514 gan roll ’ ’ of money is also noncriminal per se. Putting the two acts together does not make either one criminal under section 165.30, but, under that section, if an arresting officer with experience in the field happens to discover that these two acts were performed by the same person, conviction under the section can follow.
It would seem under these circumstances that the language of the Supreme Court in United States v. Cohen Grocery Co. (255 U. S. 81, 89) is appropriate. There while holding a statute unconstitutional the court stated, “ that the section forbids no specific or definite act. It confines the subject-matter of the investigation which it authorizes to no element essentially inhering in the transaction as to which it provides. It leaves open, therefore, the widest conceivable inquiry, the scope of which no one can foresee and the result of which no one can foreshadow or adequately guard against.” The language of the court in Connally v. General Constr. Co. (269 U. S. 385, 391) is also appropriate, for the Supreme Court there held a statute unconstitutionally vague because it lacked definite standards and prohibited ‘ ‘ the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application”. Applying section 165.30 to the general public would seem almost impossible in view of the lack of knowledge, on the part of the general public, of the definition of confidence games. To allow the statute to stand would leave the imposition of the standards to be applied to the police officer and, indeed, would appear inevitably to lead the trial court to over-reliance on that expert’s testimony. The gap in the statute may not be filled in this manner. (See State v. Caez, 81 N. J. Super. 315, 321, where the court stated: “ If the law fails to define the crime with sufficient certainty * * * police action will not remedy the deficiency. ”)
While generality in the terms of even a criminal statute is permissible, it is nonetheless a prerequisite that the terms used would convey to one of ordinary experience and understanding, an understanding of the acts prohibited. (See Boyce Motor Lines v. United States, 342 U. S. 337, 340 ; Jaquith v. Commonwealth, 331 Mass. 439.) But under the section at law the standard to be applied is not set forth, nor does it depend upon the understanding of the person of ordinary experience or intelligence. Indeed, it is implicit in the statute that the expert witness define the confidence game and its facets. It would seem that the definition would vary from person to person, police officer to police officer, or court to court. In this respect, it would seem that the term is quite comparable to the term1 ‘ gangster”, which was held unconstitutionally vague in Lanzetta v. *515 New Jersey (306 U. S. 451) on an attack upon a statute which punished one held to be in that status. (See, generally, People v. Diaz, 4 N Y 2d 469, where the issue was the constitutionality of a statute proscribing ‘ ‘ loitering ’ ’ and the court held that although that term, as a word of art, may have a specific meaning for lawyers ‘ ‘ it does not follow that by itself, and without more, such term is enough to inform a citizen of its criminal implications ”.)
It is, of course, the rule that a statute should be construed, if possible, to avoid a finding of unconstitutionality. But if such a construction would seriously impair the statute’s effectiveness, declaration of unconstitutionality should follow (United States v. Harriss, 347 U. S. 612).
The actions of defendants in inquiring of the hotel’s location of Moore were as consistent with innocence as with guilt. The sole additional evidence was the proof that defendants possessed “ Michigan rolls ” and the officer’s testimony that, prior to stopping Moore, defendants had been walking together and that the inquiry and flashing one of the rolls showed that the inquiry was of a sort commonly used in the perpetration of a confidence game. Thus, criminality was established by the expertise and observations of the officer, based on facts not made part of the crime by the statute itself.
It may be possible in the instant case to hold that in this context the playing of the confidence game did not proceed sufficiently far to warrant conviction. But this would be inconsistent with the plain language of the statute, which clearly is aimed at one who utters words. To read into it a requirement that acts be committed also, or that there must be a coexistent fraudulent intent, would require stretching its language beyond reasonable bounds.
The judgments of conviction should be reversed on the law and complaint dismissed.
Markowitz and Street, JJ., concur.
Judgments reversed, etc.