Bergan, J.
The circumstantial evidence in this record, seen in full perspective, forms a reliable basis upon which the jury could make a finding that defendant-appellant Wachowicz, acting with Jack Morris, attempted to break into a building in the early hours of the morning and for this purpose they used together a pinch bar, a workable burglar’s tool found in possession of Morris.
Proof of the crime itself, the attempt to commit burglary, is clear and unmistakable. The physical evidence points to such a crime. It is an accepted rule that the corpus delicti may be established by circumstantial evidence (22A C. J. S., Criminal Law, § 604, p. 410; People v. Feeley, 374 Ill. 402).
The attempted break was made in a tavern. The manager testified he had left the premises at 3:30 in the morning and had locked the three doors to the street. There were no marks on the doors at this time and they were properly closed. Defendant was found close to the tavern and arrested at 5:30 in the morning.
When the doors to the tavern were thereafter examined it was found by the manager and the police that one door was partly opened; inside hooks had been pulled loose from it, and there were marks on all three doors which a jury, looking at contemporary photographs and hearing the testimony, could readily believe were made after 3:30 a.m. by a metal instrument in an attempt to. break in.
As the police approached in a radio car in response to a call, the source of which was not identified, to go to the tavern, the defendant and Morris were seen, as the police witnesses described what they saw, “right next to each other” and ‘ * right together ’ ’ and ‘ ‘ they were together ’ ’. They were “ along side ” the tavern.
There is some proof that as the police car approached they were “walking” but as the police got out of the car this *372 defendant-appellant “made three or four quick steps”, while Morris “ stood still ”.
It was observed that Morris “ stuck something in his back pocket and pulled his shirt down When he was frisked by the police an iron pinch bar was found. This fitted accurately into some of the places where there were marks on the tavern doors.
The jury could reasonably have found, then, that Morris had in his hand the pinch bar while he and this defendant were in close proximity to a building on which the bar had been used to attempt a break and that defendant’s quick steps away from Morris as the police arrived were the result of a guilty apprehension. The least that can be said of this record is that this defendant’s guilt is a reasonable inference both in the attempted break and the use of the tool found in Morris’ pocket.
It is interesting to note that the reports of the older criminal cases show comparatively little reliance on confessions obtained by the police and hence, of necessity, greater dependence was placed on circumstantial proof of the crime charged. It becomes clear that in future practice, in the light of constitutional safeguards, the confession will become a rarer thing; and, therefore, it is necessary, especially in homicide and burglary, to keep in clear focus the effective role of circumstantial proof.
The rule governing the sufficiency of circumstantial evidence as this court has restated it many times is: (a) that the hypothesis of guilt should ‘ ‘ flow naturally from the facts proved, and be consistent with them all”; (b) the facts proved must all be consistent with guilt and inconsistent with innocence and exclude “to a moral certainty” every hypothesis but guilt (e.g., People v. Bennett, 49 N. Y. 137,144; People v. Harris, 136 N. Y. 423; People v. Razezicz, 206 N. Y. 249; People v. Woltering, 275 N. Y. 51, 61; People v. Eckert, 2 N Y 2d 126). The rule, as Judge Hubbs noted in Woltering, has been “repeatedly reiterated by this court ”.
But with these precautions, essentially an insistence on reliability of the inferences to be drawn from established facts, this court has always accepted circumstantial evidence as a sound basis for adjudication in criminal as well as in civil cases.
In the end, it is a question whether common human experience would lead a reasonable man, putting his mind to it, to reject or accept the inferences asserted for the established facts.
*373 As Chief Judge Bartlett noted in People v. De Martini (218 N. Y. 561, 566), this court has never held that direct evidence “is always of a higher quality”; but, indeed, has “ declared otherwise ”, citing People v. Place (157 N. Y. 584). In that case, a careful analysis of the general rule that the inference of guilt must be the only one ‘ ‘ that can be reasonably drawn from the facts ”, restated in People v. Harris (supra), Judge Martin examined the circumstantial facts of a murder to conclude that the proof “points with almost unerring certainty” to defendant’s guilt (p. 595).
Wigmore and others have compared the relative reliability in the business of adjudication of direct and circumstantial evidence without, as Chief Judge Bartlett noted in Be Martini (supra), reaching a judgment value. Indeed, Wigmore says that “it is out of the question to make a general assertion ascribing greater weight to one class or to the other” (1 Wigmore, Evidence [3d ed.], § 26, p. 401).
But he does cite as one example of judicial evaluation the opinion of Gibson, C. J., in Commonwealth v. Harman (4 Pa. 269, 271-272): “Circumstantial evidence is, in the abstract, nearly, though perhaps not altogether, as strong as positive evidence; in the concrete, it may be infinitely stronger.”
Wharton draws this conclusion: 11 The view has often been stated that circumstantial evidence is to be viewed with distrust and that, to justify a conviction on circumstantial evidence, it is necessary to exclude every possible hypothesis of innocence. When, however, the courts have given serious consideration to the relative advantage of direct and circumstantial evidence, they have in general recognized that circumstantial evidence may, in given circumstances, have equal if not greater weight than direct evidence so-called.” (Wharton’s Criminal Evidence [12th ed.], § 6, pp. 12-13, citing Harman, supra.)
Finally, most proof in a court is directed toward an inference to be drawn. Much of what an eyewitness describes needs implementation to become the basis for decision; and the court must continuously seek, as far as it can from facts and groups of facts adduced, a reliable basis for its judgments.
This, indeed, has been the experience of this court where a careful analysis of the reliability of circumstantial proof has led to differentiated results. Sometimes circumstantial proof has *374 been held sufficient; sometimes insufficient. It was held sufficiently reliable to sustain conviction, e.g., in Harris, Place and Eckert (supra); and insufficiently reliable, and thus requiring new trials in Razezicz (supra); People v. Giordano (213 N. Y. 575) and Woltering (supra). In Di Martini (supra) a new trial was ordered because the charge misconceived the role of circumstantial evidence. The concurrently decided case of People v. Cleague (22 N Y 2d 363) is in the chain of differentiated evaluations in which a majority of the court is of opinion the circumstantial proof is not strong enough.
But in the present case the only reasonable hypothesis to which the facts lead is the one accepted by the jury, that when the police came this defendant had just attempted to break into the tavern.
The judgment should be affirmed.