Benjamin Altman, J.
The State Legislature has recently seen fit to implement another enactment[1] in an attempt to *591 curb or lessen the increase in activity of the "oldest profession” — prostitution.
The latest enactment is section 240.37 of the Penal Law, loitering for the purpose of prostitution. It is primarily directed at the prostitutes who the local legislators feel will greatly diminish shoppers and theatergoers in the midtown area of New York City (such as the infamous Minnesota Strip —Eighth Avenue above 42nd Street — named for its young prostitutes from the Midwest).
The factual situation is as follows: On July 12, 1976, at approximately 2:15 a.m., Police Officer Charles Hopkins was patrolling Eighth Avenue between 40th and 45th Streets. He saw the defendant Smith standing near 632 Eighth Avenue. This area of Eighth Avenue in general and the building at 632 Eighth Avenue, specifically, were described by the officer as an area with a high incidence of prostitution.
The officer and his partner observed the defendant for 15 to 20 minutes. During this time, the officer saw Ms. Smith apparently communicate with two unidentified male passersby. Ms. Smith was observed touching each man’s arm, saying something to him and each one continuing on his way.
Finally, the arresting officer observed the defendant engage in conversation with a third unidentified male passerby. This male was observed accompanying the defendant into the building known by the officer to cater to prostitutes and their clientele.
The defendant and the unidentified male exited from the building shortly thereafter, whereupon the officer arrested the defendant for violating section 240.37 of the Penal Law, loitering for the purposes of engaging in a prostitution offense.
The defendant claims that this statute violates the Fourth and Fourteenth Amendments of the United States Constitution and sections 6 and 12 of article I of the New York State Constitution, since it is vague and encourages arbitrary and discriminatory law enforcement.
The People contend that the law is as plain and lucid as a penal statute must be to pass constitutional muster.
The statute in question (Penal Law, § 240.37) states the following:
*592 "1. For the purposes of this section, 'public place’ means any street, sidewalk, bridge, alley or alleyway, plaza, park, driveway, parking lot or transportation facility or the doorways and entrance ways to any building which fronts on any of the aforesaid places, or a motor vehicle in or on any such place.
"2. Any person who remains or wanders about in a public place and repeatedly beckons to, or repeatedly stops, or repeatedly attempts to stop, or repeatedly attempts to engage passers-by in conversation, or repeatedly stops or attempts to stop motor vehicles, or repeatedly interferes with the free passage of other persons, for the purpose of prostitution, or of patronizing a prostitute as those terms are defined in article two hundred thirty of the penal law, shall be guilty of a violation and is guilty of a class B misdemeanor if such person has previously been convicted of a violation of this section or of sections 230.00 or 230.05 of the penal law.
"3. Any person who remains or wanders about in a public place and repeatedly beckons to, or repeatedly stops, or repeatedly attempts to stop, or repeatedly attempts to engage passers-by in conversation, or repeatedly stops or attempts to stop motor vehicles, or repeatedly interferes with the free passage of other persons, for the purpose of promoting prostitution as defined in article two hundred thirty of the penal law is guilty of a class A misdemeanor.”
The issues presented are whether this statute is void for vagueness and whether it is a violation of the Fourth and Fourteenth Amendments of the United States Constitution.
Some examination of the concept of vagueness is required here. Under the constitutional requirement that a criminal statute be definite, the underlying principle is that no man is to be held criminally responsible for conduct which he could not reasonably understand to be proscribed (Palmer v City of Euclid, 402 US 544; Wainwright v Stone, 414 US 21). With respect to criminal statutes, all persons are entitled to be informed as to what the statute commands or forbids.
The topic of vagueness has been dealt with in case law. The following cases are set forth to clearly demonstrate vague cases.
In Papachristou v City of Jacksonville (405 US 156), the defendants were convicted of violating a Jacksonville vagrancy ordinance which levied criminal penalties "on rogues and vagabonds or dissolute persons who go about begging, common gamblers, persons who use juggling or unlawful *593 games or plays, common drunkards, common night walkers, thieves, pilferers, or pickpockets, traders in stolen property, lewd, wanton and lascivious persons, keepers of gambling places, common railers and brawlers, persons wandering or strolling around from place to place without any lawful purpose or object, habitual loafers, disorderly persons, persons neglecting all lawful business and habitually spending their time by frequenting houses of ill fame, gaming houses, or places where alcoholic beverages are sold or served, persons able to work but habitually living upon the earnings of their wives or minor children.”
They were charged with (p 158) "prowling by auto,” being "vagabonds,” "loitering,” or being a "common thief’ — all forms of vagrancy.
The Supreme Court, citing United States v Harriss (347 US 612, 617), held that the statute was void for vagueness, both from the standpoint that it "fail[ed] to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute” and because it encouraged arbitrary and erratic arrests and convictions (Thornhill v Alabama, 310 US 88; Herndon v Lowry, 301 US 242).
This Florida statute failed to give fair notice of the offending conduct (Lanzetta v New Jersey, 306 US 451). The defendants were arrested here for stopping near a used car lot which had been broken into several times; for waiting on a street corner; walking back and forth over a two-block area; being a "common thief’ (for the arresting officer had knowledge that the defendant had prior arrests on theft charges).
As the court pointed out, this statute would attack American institutions such as "loafing,” "wandering” or "strolling” and "night walking” as done by insomniacs; and totally innocent, innocuous conduct could cause an individual to be arrested and convicted under the Florida statute. Too much leeway in the form of interpretation of the statute was given to the officers.
In Palmer v City of Euclid (402 US 544, supra) a city ordinance made it a crime to be a person who wanders about the streets or other public ways or who is found abroad at late or unusual hours "without any visible or lawful business.”
The individual charged with the breach of this ordinance had done the following: Late at night a female exited his car. She entered an apartment house. Then he pulled his car onto the street with his lights on and used a two-way radio.
*594 The Supreme Court held the ordinance vague, for it did not give sufficient notice to the average person that discharging a friend at an apartment house and then talking on a radio while parked demonstrated that he was "without visible or lawful business.”
Thus, the United States Supreme Court has clearly set forth examples of vague statutes (in the above examples, "suspicious person” statutes were scrutinized).
The doctrine of vagueness is one of basic fairness. It is not a principle designed to cast each attempt at drafting a criminal statute into a constitutional dilemma. Statutes must be both general enough to take into account a variety of human conduct and be sufficiently specific to provide fair warning that certain kinds of conduct are prohibited (see Colten v Kentucky, 407 US 104).
Now, we may review case law dealing with specific loitering statutes in our and other jurisdictions.
The topic of "loitering” is indeed a controversial one. Some jurisdictions have concluded that loitering statutes are necessary for the protection of society and the preservation of the public peace (see Seattle v Drew, 70 Wn 2d 405). Yet an increasing number of courts in recent years have struck down legislation directed at loitering, especially where the term was not defined or the circumstances under which the statute would apply were not sufficiently set forth (United States ex rel. Newsome v Malcolm, 492 F2d 1166; People v Berck, 32 NY2d 567, cert den 414 US 1093; People v Beltrand, 63 Misc 2d 1041; People v Villaneuva, 65 Misc 2d 484).
Other jurisdictions have instituted statutes dealing with loitering for the purpose of prostitution. The State of Washington enacted such a statute. The ordinance stated that it is unlawful to "loiter in or near any thoroughfare or place open to the public in a manner and under circumstances manifesting the purpose of inducing, enticing, soliciting or procuring another to commit an act of prostitution.”
In Seattle v Jones (79 Wn 2d 626), the Supreme Court of Washington held that the above statute was not invalid for vagueness. The court held that the statute was sufficiently clear so that men of reasonable understanding are not required to guess at the meaning of the enactment (Winters v New York, 333 US 507).
Two similar cases to the one now before the bench are that *595 of People v Willmott (67 Misc 2d 709) and People v Pagnotta (25 NY2d 333). At issue in Willmott was subdivision 3 of section 240.35 of the Penal Law which prohibits loitering in a public place for the purpose of engaging or soliciting another person to engage in deviate sexual intercourse or other sexual behavior of a deviate nature.
The court cited the fact that it was not loitering by itself which is prohibited, but loitering "in a public place for the purpose of engaging, or soliciting another person to engage, in deviate sexual intercourse or other sexual behavior of a deviate nature” which is proscribed. The court felt that the subdivision sufficiently informs a person of normal understanding of what is forbidden. Nor did the court conclude that the statute was unconstitutional because of vagueness and lack of due process.
A similar case and similar contentions were made by a defendant in People v Pagnotta (supra), which represents a decision by the Court of Appeals on loitering for the purpose of unlawfully using or possessing a narcotic drug.[2]
A police officer, knowing the defendant to be a narcotics addict, entered a building adjacent to the one he had seen the defendant enter. The officer proceeded to the roof and crossed to the roof of the building which the defendant had entered. He opened the door leading from the roof to the stairway and saw the defendant and two others on the stair landing. The defendant had a bottle cap containing a liquid in his hand. One of the others had a hypodermic needle and an eyedropper (the defendant dropped the bottle cap, spilling the liquid, none of which was recovered). No controlled substance was confiscated.
The defendant and his companions were placed under arrest and charged with loitering for the purpose of unlawfully using or possessing a narcotic drug.
The defendant contended that the People at trial failed to establish the presence of any narcotic drug in his possession (or that of his companions) and that at best the facts raise a mere suspicion as to possession.
The court stated (25 NY2d 333, 337): "While it is true that *596 the People were unable to actually prove that the liquid in the cooker was in fact a narcotic drug, the circumstances of the gathering, the possession of narcotics implements by one of defendant’s companions and the expert testimony of the police officer in regard to the common practice of narcotics addicts support the inference that the defendant and his companions had gathered to take narcotic drugs. To be sure, the evidence upon which guilt is found in this case is merely circumstantial; however, the facts support no other inference. The hypothesis of guilt Hows naturally from and is consistent with all the facts proven. Moreover, all these facts are clearly inconsistent with innocence and exclude to a moral certainty every hypothesis but guilt. (People v Wachowicz, 22 NY2d 369, 372.)” (Emphasis added.)
In Pagnotta, the circumstances, conduct, and the paraphernalia possessed by the defendants were sufficient to uphold an arrest of the defendants on the statute.
In Pagnotta (supra), the officer could not hear what was said but could observe. From this observation, plus his experience, the officer concluded that the defendants were about to use heroin.
The defendant contends that the statute allows her to be punished for conduct which has not occurred — the act of prostitution — but which may occur. The contention is that this is equivalent to punishment on suspicion and allows for arbitrary enforcement.
The State Legislature’s aim in passing this statute was obviously twofold. First, it sought to prevent prostitutes from soliciting and annoying citizens and passersby as customers from the general flow of pedestrian traffic, an intensely aggravating problem in the City of New York. Newspaper articles and television news coverage continuously point out how citizens are being embarrassed, annoyed, harassed, and, in some cases, physically assaulted by (alleged?) prostitutes on the streets and sidewalks of New York. It is the right of a citizen to go about the streets without affront to his or her sense of decency. Secondly, the aim is to make soliciting by prostitutes tougher by minimizing their use of city sidewalks to peddle their trade.
It is completely proper and within its police powers for the Legislature to attempt to protect its citizenry and limit an illegal activity — prostitution. Also, this court must give consideration to the presumption of the constitutionality of a legisla *597 tive enactment — a presumption not readily overcome (People v Venable, 46 AD2d 73; People v Broadie, 45 AD2d 649).
In most instances, courts are reluctant to overthrow the action of the Legislature in the exercise of its police power, if the Legislature acts reasonably (People v Amber, 76 Misc 2d 267).
Judicial inquiry is not foreclosed as to the constitutionality of any individual enactment, even though strong presumptions of constitutionality attach to any act of the Legislature (People v Pagnotta, 25 NY2d 333, supra; People v Kaiser, 21 NY2d 86, affd 394 US 280). A statute should not ordinarily be set aside as unconstitutional by a court of original jurisdiction unless such conclusion is inescapable (People v Tabb, 80 Misc 2d 431; People v Estrada, 80 Misc 2d 608; People v Webb, 78 Misc 2d 253).
A further point should be discussed: Does the statute impede freedom of speech? It is true that the statute under consideration is not directed against mere communication, but against communication for the purpose of allegedly attempting or allegedly accomplishing a prohibited act. In Dennis v United States (341 US 494, 508) the Supreme Court stated: "Speech is not an absolute, above and beyond control by the legislature when its judgment, subject to review here, is that certain kinds of speech are so undesirable as to warrant criminal sanction.” Lewd, obscene, and profane language is not protected (Chaplinsky v New Hampshire, 315 US 568). It is true that, in most cases, the language used by a prostitute to solicit might or might not constitute undesirable speech. Yet, the words in the statute stating "repeatedly attempts to engage passers-by in conversation * * * for the purpose of prostitution” is prohibited are of such scope that it forces the police officer to judge which language is obscene, which language is used for soliciting, and he must determine if the individual’s actions are such that they outweigh any reasonable possibility that the conversation is innocent.
This permits unfettered discretion on the part of the officer. Each officer is free to draw his own conclusion within the large degree of judgment permitted by the statute (see Cox v Louisiana, 379 US 536; Shuttlesworth v City of Birmingham, 382 US 87). Thus, a person may stand on the sidewalk and engage passersby in conversation only at the whim of any police officer. As stated in Cox v Louisiana (supra, p 579), this invites government "by the moment-to-moment opinions of a *598 policeman on his beat.” As stated in People v Berck (32 NY2d 567, 570, supra) in reference to a loitering statute "it merely indicates that a person may be held for loitering if suspicion of criminality happens to be created in the mind of the arresting officer.”
Again, let us look at the pertinent sections of the statute. Subdivision 2 of section 240.37 states: "Any person who remains or wanders about in a public place and repeatedly beckons to, or repeatedly stops, or repeatedly attempts to stop, or repeatedly attempts to engage passers-by in conversation, or repeatedly stops or attempts to stop motor vehicles, or repeatedly interferes with the free passage of other persons, for the purpose of prostitution, or of patronizing a prostitute * * * shall be guilty of a violation.”
Subdivision 3 restates subdivision 2 but directs itself at "promoting prostitution.”
Is this statute so vague as to make it void?
Here, it is the judgment of the officer which classifies the activity of the defendant that constitutes the crime. In effect, the law is operating on the theory that loitering might lead to a commission of a crime, specifically, prostitution. Thus, the loitering, in and of itself, is classified as criminal. When the law seeks to operate in this manner, "suspicion is the foundation of the conviction; the presumption of innocence is thrown out the window” (Douglas, Vagrancy and Arrest on Suspicion, 70 Yale LJ 1, 11).
This statute is one in which arrests are made of those suspected of criminal activity and with respect to whom the police lack sufficient probable cause to effect a proper arrest as to the crime suspected. This statute cannot be considered a viable, valid one or our penal system will have to have been deemed severely restructured (see Fenster v Leary, 20 NY2d 309).
The statute proscribes conduct that would ordinarily be innocent — a pollster, a person lost and seeking directions, a political candidate, or political worker, a union organizer — but becomes criminal when it is done for the purposes of prostitution.
This is the key element. The conduct, an actuality, innocent or not, must be interpreted as being for the purposes of prostitution by the officer on the beat. It is the subjective judgment of the officer that must conclude that the action of *599 the individual is of such manner and circumstance so as to state that the person in question is loitering for the purposes of prostitution.
There is no standard or criterion within the statutory framework which can serve as a guide as to whether the exercise of judgment was correct or not (People v Berck, 32 NY2d 567, supra).
Thus, at best, this statute provides for arrest upon mere suspicion. It is well-settled law that for an arrest to be valid, it must be made upon probable cause (Papachristou v City of Jacksonville, 405 US 156, supra; People v Brown, 24 NY2d 421; People v Valentine, 17 NY2d 128; People v Lebron, 48 AD2d 800). Therefore, the statute suffers from this added infirmity.
As compared to other vagrancy and loitering cases cited supra, it is incumbent upon this court to make the following analogies:
Notwithstanding the decision upholding a loitering for the purposes of prostitution statute in Washington (Jones, 79 Wn 2d 626, supra), and the loitering for the purposes of deviate sexual intercourse in New York (Willmott, 67 Misc 2d 709, supra), this court is of the conclusion that the specific statute (Penal Law, § 240.37), as enacted greatly resembles the "suspicious persons” statutes held as unconstitutional (Papachristou, supra; Palmer, 402 US 544, supra).
In Pagnotta (25 NY2d 333, supra) the crime of loitering for the purposes of using or possessing a narcotic drug has a certain finite quality lacking in the loitering for prostitution statute.
In Pagnotta, the existing circumstances, conduct, and presence of certain utensils together excluded to a moral certainty that the defendants were indeed loitering for the purpose of using a narcotic drug (or controlled substance).
Unlike Pagnotta, the illegal activity proscribed in section 240.37 of the Penal Law cannot be proven to a moral certainty through the presence of circumstantial evidence only. The Court of Appeals in Pagnotta alludes to this problem. It stated (p 339): "A more difficult case might have been presented if the defendant and his companions merely congregated without any narcotics instruments to await the possible delivery of drugs which they would later possess and use.”
The loitering statute here at best produces marginal cases *600 in which it is difficult to determine whether certain conduct is criminal or not. Clear indications of guilt are lacking, and police officers seeking to enforce section 240.37 are left to guess at the existence of criminal intent by observing the (perhaps harmless) conduct of an individual.
Again, alluding to the Pagnotta decision, the presence of the narcotic instruments presented probable cause for arrest.
In the situation currently under consideration by this court, the officer did not have any such tangible items which would generate probable cause for arrest. The officer did not hear the context of the conversations between the defendant and the various males. He had only a bare suspicion that they were in regard to the current street price of illicit sexual acts.
The arrest of the defendant upon the officer’s observations can only be stated as an arrest purely on suspicion. There are no objective standards present in the statute which would transform this bare suspicion (however well formulated, as here with an experienced officer) into probable cause for arrest.
Under the loitering statute presently under consideration, many innocent activities could be occurring with nothing as concrete as illicit drug paraphernalia to bring it from the haze of suspicion to the lucidness of probable cause.
Looking at the situation here, the defendant spoke to two or three men. One accompanied the defendant into the hotel. Five to six minutes later, the defendant and the unidentified male exited from the hotel. This court is not naive enough to state that in the world of sex for hire, five or six minutes is not sufficient for some form of illicit sex to occur. Yet, the distinct possibility existed that the defendant was in distress and needed assistance. This speculation shows that not every possible legal conduct can be excluded to a moral certainty. As stated in the footnote in the beginning of this opinion, it was noted that there are other legislative enactments available in the pursuit of controlling prostitution.
If the officer had heard a conversation between the defendant and one of the males, then an arrest would be available under section 230.00 of the Penal Law, which prohibits a person from engaging, agreeing, or offering to engage in sexual conduct with another.
As desirable as section 240.37 may be in curing certain obvious ills, this court sees no reason to permit section 240.37 *601 to exist. It is vague, overly broad and can subject persons guilty of nothing but innocent conduct to needless arrest. Sufficient statutes exist to curb prostitution. If municipal and local governments seek to eradicate prostitution, a formidable task, then they must take it upon themselves to rearrange priorities and provide sufficient funds and manpower to enforce the statutes currently available. Enactment of a statute making for easy arrests on suspicious circumstances is not the answer.
This court agrees with the wisdom of the State Legislature in its desire to control and curb prostitution but, here, the statute is so vague and overbroad as to be clearly, readily, and plainly in violation of the Federal and State Constitutions.
This court fails to see the logic in exchanging or lessening the requirement for arrest (from probable cause to suspicion) for a statute which is at best a poor duplication of other enactments and which violates our constitutional safeguards.
In sum, the statute is vague, overbroad and inhibits free speech. If the Legislature wants to limit, control or eliminate this admittedly terrible scourge of crowds of persons selling their illegal wares to the utter disgust, fear and intimidation of the communities throughout the whole city, it must and should use other means of doing so. Many Western European cities have initiated other effective prostitution "controls.” Perhaps a closer examination of those "controls” would be more fruitful for the State legislative action.
For the above-stated reasons the defendant’s motion is granted in all respects.

. See Penal Law, § 230.00 — prostitution; § 230.05 — patronizing prostitutes; §§ 230.15, 230.20 — promoting or profiting from prostitution; § 230.25 — maintaining premises on which prostitution is carried on; § 230.40 — failure of property owner to
*591 halt use of premises as place of prostitution; Real Property Actions and Proceedings Law, § 715 — removal of tenant engaged in prostitution by landlord, neighbor or police.

. The challenge to the constitutionality was to subdivision 5 of section 1533 of the former Penal Law. The section became subdivision 9 of section 240.35 of the Penal Law. The section is now covered under section 240.36 of the Penal Law, loitering in the first degree.