■ In the Matter of THOMAS M., Appellant.—Appeal from an order of the Family Court, Richmond County, dated October 19, 1976, which, upon a finding, after a hearing, that appellant had committed acts which, if done by an adult, would constitute a crime, adjudicated him a juvenile delinquent and suspended judgment for a period of one year. Order affirmed, without costs or disbursements (see *People v Morales,* 37 NY2d 262, 271; *People v Wachowicz,* 22 NY2d 369). Damiani, J. P., Shapiro and Margett, JJ., concur; Titone, J., dissents and votes to reverse the order and dismiss the juvenile delinquency petition, with the following memorandum: A juvenile delinquency petition was filed in the Family Court on April 6, 1976, alleging that appellant (then 14 years old), acting in concert with one John Dono, who was apprehended, and another person who was not apprehended, unlawfully removed the screen from the rear window of a bungalow located on Staten Island and attempted to enter the premises. The petition also alleges that appellant was seen fleeing from the scene by Police Officer William Kerber. At the Family Court hearing, Officer Kerber testified that on March 17, 1976, at about 10:15 A.M., while on radio patrol in the vicinity of 806 Nugent Avenue, Staten Island, he saw a man, later identified as Dono, standing in front of the one-story bungalow. He noticed also that Dono was "going in and out", looking at the officer and acting nervously. Kerber then observed Dono dodge behind the bungalow and, in the next instant, saw him and two youths run out from the rear of the building. At the time Kerber was about 50 to 75 feet from them. He initially testified that he saw the face of the youth, whom he later identified as appellant, from a distance of 50 to 75 feet for a split second. Kerber further testified that he saw the three persons in question run across the street in front of his car when he was 50 feet away. He got into his patrol car and, with his partner, gave chase. Kerber stated that during the chase he saw appellant for 25 or 30 seconds from a distance of 50 to 75 feet. At one point during the chase, Kerber testified, he came within 10 feet of the appellant, whose back was towards the officer at that time. Kerber described appellant as wearing dungarees, sneakers and a jacket, which was the same texture as the dungarees, but reddish in color. He admitted he could have been mistaken as to the dungarees and sneakers, but didn't think so. Although the person later identified by Kerber as

appellant eluded him, Kerber succeeded in apprehending Dono. After arresting Dono, Kerber returned to the scene and discovered that a screen had been ripped off a window at the rear of the bungalow and the window damaged. He had seen Dono and the other two running from the area of the rear window. Kerber also testified that on the next day Detective Wolfe, to whom he had given appellant's description, called him to the station house to identify appellant. Wolfe asked Kerber whether appellant, who was at the precinct with his father, was the person he had chased the day before. Kerber replied that he was. There were no other boys in the station house when Kerber identified appellant. Frank Bettini, owner of the premises on Nugent Avenue, testified that the rear window screen was in place after he left the house on the morning of the occurrence, and that he had given no one permission to remove it. In my opinion, Kerber's evidence was insufficient as a matter of law to sustain the allegations against appellant beyond a reasonable doubt. From a reading of the minutes of the hearing in the Family Court, it is obvious that, at best, Kerber got a fleeting glimpse of the youth who was running away. It is noteworthy that although Kerber testified that he saw appellant's face for a split second from a distance of 50 to 75 feet, he offered no description as to the youth's features. Nor did Kerber describe the youth's height, weight, age, length of hair, etc., even though he did testify that he had given a description of the youth to Detective Wolfe. While Kerber "thought" the person he later identified as appellant was wearing sneakers and dungarees at the time, he was not sure. Assuming he was correct in that regard, I submit that it is not at all uncommon today to see many of our youths in the 13- to 18-year age group similarly garbed. It should also be noted that, by his own admission, Kerber observed the youth identified as appellant for a period of only 25 to 30 seconds, most of which time was consumed in a chase. Based on the foregoing, I conclude that there was insufficient evidence adduced of the identification of appellant to permit a finding that he was present at or near the scene of the alleged burglary (see *People v Taranto,* 275 App Div 1061; *People v Goodwin,* 242 App Div 801; *People v Noland,* 27 AD2d 663). Furthermore, another fatal deficiency in the People's case is the absence of proof linking one of the youths fleeing from the subject premises, purportedly the appellant, to the attempted burglary. Any inference that might be drawn from the fact that appellant might have been seen fleeing from the side or rear of the bungalow is not sufficient to meet the requirements for circumstantial evidence. The flight of the youth, normally a probative circumstance, in this instance could equally be attributed to his having been discovered as a morning trespasser (see *People v Irvin,* 43 NY2d 704). I therefore vote to reverse the order and dismiss the petition charging appellant with juvenile delinquency.