■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v MARK BIANCHINI, Respondent.—Order, Supreme Court, New York County (Cahn, J.), entered December 21, 1983, granting defendant's motion to set aside a jury verdict of guilty against him for assault in the first degree and attempted assault in the first degree and dismissing the indictment on the ground that the proof at trial was not sufficient to establish guilt beyond a reasonable doubt, unanimously reversed, on the law and the fact, the jury verdict reinstated and the matter remanded for further proceedings.

The defendant and four other teen-agers were tried together for assaultive conduct directed at two men, Minchik and Purviance, whom they believed were homosexuals. The convictions of the others have been affirmed by this court and leave to appeal denied by the Court of Appeals. As to this defen-

dant, the trial court found that, while the evidence was consistent with guilt, it did not exclude all reasonable hypotheses of innocence since the only direct evidence had this defendant merely in the company, some 45 minutes later, of the others who were positively identified as the assailants. The court appears to have been persuaded to this view because the defendant was not directly identified as having been at the scene of the crime and because not all of the witnesses testified that there were five perpetrators.

Viewing the testimony in a light most favorable to the People, as we must *(see, People v Montanez,* 41 NY2d 53, 57), we find the evidence points inexorably to the defendant's guilt. Minchik and Purviance were dropped off at their apartment in Greenwich Village in the early morning by their friends, Mr. and Mrs. Barbarisi. Mr. Barbarisi double-parked to let his passengers out and was told to hurry up by some teen-agers in a car behind who were also blowing the horn because they could not pass. Pulling slowly away, the Barbarisis heard the car's occupants shouting homosexual obscenities at Purviance and Minchik and saw the car pull over, its occupants get out and grab baseball bats from the trunk that had been opened from inside. The Barbarisis circled the block. Meanwhile, Minchik escaped to the apartment. Purviance was viciously attacked and seriously injured. The former testified that there were more than three assailants; the latter, that there were five.

The Barbarisis came up behind the assailants' car and commenced honking their horn. The assailants fled in their car. The Barbarisis followed but lost the car after a short chase. Mrs. Barbarisi did see an AAA sticker on the back of the car and later positively identified the car itself. The Barbarisis returned to the crime scene and were met there within seconds by the police who recorded the time as 3:43 A.M.

About 4:00 A.M., two men, Robinson and Colbert, were walking a few blocks from the assault scene when five teen-agers in a car pulled alongside and began shouting homosexual obscenities. The car circled the block a few times and the obscenities were repeated each time it passed the men. Colbert and Robinson flagged down a police car and reported the incident to the officers who were at the time looking for Purviance's assailants. Colbert went with the police to find the teen-agers. They were arrested a few blocks away at 4:15 A.M. This defendant was one of the five. The police searched the area of the assault, finding a golf club and four baseball bats.

The only hypothesis for concluding that this defendant was not one of the assailants would have him being picked up by the others, at nearly four in the morning, 15 minutes after the assault—not 45 minutes as found by the trial court. This hypothesis is too farfetched to be reasonable in light of Purviance's testimony that there were five teen-agers in the car prior to the assault; the other witnesses' testimony that there were four or five and certainly more than three; and that five weapons, the golf club and baseball bats, were found at the scene. "In the end, it is a question whether common human experience would lead a reasonable man, putting his mind to it, to reject or accept the inferences asserted for the established facts" *(People v Wachowicz,* 22 NY2d 369, 372). This standard and a review of the evidence most favorably to the People compel reversal. Concur—Sandler, J. P., Ross, Lynch, Milonas and Ellerin, JJ.