Jasen, J.
On this appeal, the defendant questions the constitutionality of subdivision 5 of section 1533 of the former Penal Law which made it a misdemeanor to loiter in the common areas of a building for the purpose of unlawfully using or possessing any narcotic drug.[1]
On November 29, 1965, while on patrol in Kings County, Patrolman John Connelly of the New York City Police Department saw the defendant and two others enter a building. Since the defendant was known by Officer Connelly to be a narcotics addict, the officer’s suspicions were aroused and he entered an adjoining building and went to the roof. He crossed over to the roof of the building which he had seen the defendant enter, and when he opened the door from the roof to the stairs, he came upon defendant and his two companions on the stair landing. Defendant had a bottle cap containing a liquid in his hand and one of the other men had a hypodermic needle and an eyedropper. (A subsequent search of the third man found glassine envelopes in his possession which laboratory tests indicated were completely empty.) When defendant saw the officer he dropped the bottle cap, spilling the liquid, none of which was recovered.
Defendant and his cohorts were placed under arrest and charged with possession of narcotics instruments and violations of subdivision 5 of section 1533 of the former Penal Law.
*336 The charges against one of the defendant’s companions were dismissed with the consent of the District Attorney when it was found that the glassine envelopes which the man had in his possession were completely empty. The other companion, who had held the eyedropper and needle, was. accepted for treatment under article IX of the Mental Hygiene Law.
At the defendant’s trial, Officer Connelly testified on the basis of his experience in making narcotics arrests and his training at the police narcotics school, that bottle caps are commonly used by narcotics addicts as “ cookers ”. Heroin is put into the cap along with a quantity of water to dissolve the drug and the mixture is then drawn up into an eyedropper and injected into the vein by means of a hypodermic needle.
The Trial Judge dismissed the charge of possession of narcotics instruments which had been placed against defendant, because a bottle cap or “ cooker ” is not one of the instruments enumerated in the statute. (See former Penal Law, § 1747-e.) However, defendant was found guilty of violating subdivision 5 of section 1533 of the former Penal Law and was sentenced to 60 days in the New York City Workhouse.
On this appeal, defendant contends that the People failed to prove beyond a reasonable doubt that he was loitering for the purpose of possessing or using a narcotic drug. He argues that the People failed to establish the presence of any narcotic drug in his possession or in the possession of his companions, and he claims that at best the facts of this case raise a mere suspicion as to possession. In addition, defendant asserts that dismissal of the charges against the companion who only had the glassine envelopes supports his position that possession of narcotics is needed to sustain' a charge under subdivision 5 of section 1533.
Inasmuch as the statute makes loitering for the purpose of using or possessing a narcotic drug a crime, it was unnecessary for the People to prove that the unrecovered liquid was in fact heroin, so long as it was shown that the defendant and his friends had congregated with the purpose of using or possessing drugs. Furthermore, even though the District Attorney may have consented to a dismissal as to the companion who had the envelopes, this does not mandate that possession be proven, nor may it be raised as some sort of collateral estoppel in regard to *337 this defendant. (Cf. People ex rel. Guido v. Calkins, 9 N Y 2d 77; People v. Kief, 126 N. Y. 661.)
While it is true that the People were unable to actually prove that the liquid in the cooker was in fact a narcotic drug, the circumstances of the gathering, the possession of narcotics implements by one of defendant’s companions and the expert testimony of the police officer in regard to the common practice of narcotics addicts support the inference that the defendant and his companions had gathered to take narcotic drugs. To be sure, the evidence upon which guilt is found in this case is merely circumstantial; however, the facts support no other inference. The hypothesis of guilt flows naturally from and is consistent with all the facts proven. Moreover, all these facts are clearly inconsistent with innocence and exclude to a moral certainty every hypothesis but guilt. (People v. Wachowicz, 22 N Y 2d 369, 372.)
Defendant also challenges subdivision 5 of section 1533 of the former Penal Law as being unconstitutional due to vagueness and lack of proper purpose.
There is a strong presumption that a statute duly enacted by the Legislature is constitutional. Indeed, we have held that in order to declare a law unconstitutional, the invalidity of the law must be demonstrated beyond a reasonable doubt. (Matter of Van Berkel v. Power, 16 N Y 2d 37, 40.)
Of course, a statute must be sufficiently definite to give a reasonable man subject to it notice of the nature of what is prohibited and what is required of him. (People v. Byron, 17 N Y 2d 64, 67; Lanzetta v. New Jersey, 306 U. S. 451.) Moreover, in order to be upheld as constitutional, a law which places some restriction upon an individual’s freedom of action in the name of the police power must bear some reasonable relation to the public good. (People v. Bunis, 9 N Y 2d 1, 4.) A statute which fails to distinguish between innocent conduct and action which is calculated to cause harm may not be sustained. In People v. Diaz (4 N Y 2d 469), we held that a statute which made it illegal to lounge or loiter about any street in the City of Dunkirk failed to draw this distinction. Likewise, in Fenster v. Leary (20 N Y 2d 309), we overturned a statute which made it a crime for an individual to have no visible means of support and to live without employment. In that case we ruled that such conduct in *338 no way impinged on the rights of others and had only the most tenuous connection with commission of a crime and disruption of public order.
We. hold the statute in the present case is not too vague, and is a completely reasonable restriction upon the individual for the public good. The statute makes it illegal to loiter about any “ stairway, staircase, hall, roof, elevator, cellar, courtyard or any passageway of a building for the purpose of unlawfully using or possessing any narcotic drug ”. The statute does not penalize mere loitering as did the statute in Dias, but rather prohibits loitering for the purpose of committing the crime of unlawfully using or possessing narcotic drugs. (Cf. People v. Johnson, 6 N Y 2d 549, where we upheld a statute making it a crime to loiter in a school building; the majority holding it to be common knowledge that school authorities often are harassed by loiterers who are usually present for some illegitimate purpose.)
However, the defendant argues that subdivision 5 of section 1533 has no reasonable purpose and was merely intended as a catchall to prevent a suspect from being set free in a case where evidence was illegally seized or where there is insufficient evidence to sustain a conviction for any of the substantive narcotics offenses. With this appraisal we do not agree.
It appears that the Legislature in enacting the statute before us sought to prevent generally idle and dissolute persons engaged in the unlawful traffic of narcotics, from drawing together for that purpose in places frequented by other citizens, thereby endangering public health, morals and tranquility. (See Burmeister v. New York City Police Dept., 275 F. Supp. 690.) This protection of innocent citizens from drug users is a very crucial problem. As has recently been pointed out by several newspaper articles, in some of our poorer urban areas where drug use is high, innocent citizens are often beaten, robbed, and even murdered by drug addicts. (See, e.g., New York Times, Sept. 24, 1969, p. 1, col. 2.) It is completely reasonable and proper for the Legislature to protect these citizens from accidentally stumbling into the midst of such miscreants in the common areas of buildings.
Finally, defendant argues that the statute punishes an individual for a bare desire, to commit a criminal act, and he cites *339 People v. Rizzo (246 N. Y. 334) as authority for the proposition that it is impermissible to make criminal the mere intent to commit a crime.
Defendant’s reliance upon Rizzo is misplaced. In Rizzo the defendant and his cohorts planned to rob a bank messenger carrying a payroll. They armed themselves and proceeded to cruise the neighborhood looking for the messenger, who never appeared. During this period the police arrested the defendant and his companions and charged them with attempted robbery. This court reversed their conviction, holding the acts of the defendants too remote from the consummation of the crime of robbery to be considered an attempt.
In the case at bar, the defendant and his companions were gathered for the obvious purpose of taking heroin. They had the needle and eyedropper, the cooker, and, apparently, the heroin ready for use. But for the entrance of Officer Connelly, they probably would have succeeded in injecting the fluid which was in the cooker within the next few moments. It is hard to conceive of any other set of circumstances which would have found them closer to consummation of the act of using drugs. Furthermore, it is of no significance that the liquid in the cooker was not proven to be heroin for even if the defendant and his companions were about to use some innocent substance which they mistakenly believed to be heroin, they would still be guilty of a violation of subdivision 5 of section 1533 because they were loitering for the purpose of using a narcotic drug.
A more difficult case might have been presented if the defendant and his companions merely congregated without any narcotics instruments to await the possible delivery of drugs which they would later possess and use.
However, these are not the facts of this case. That there may be marginal cases in which it is difficult to determine whether certain conduct is criminal is not sufficient reason to declare the language of a statute unconstitutionally vague. (Roth v. United States, 354 U. S. 476, 491; United States v. Harriss, 347 U. S. 612, 618.)
The statute in this case is clear and unambiguous. It prohibits loitering or congregating for the purpose of committing a criminal act. It certainly is a reasonable legislative response to a critical problem.
*340 Accordingly, the judgment of the Appellate Term should he affirmed.
Chief Judge Fuld and Judges 'Burke, Scileppi, Bergan, Breitel, and Gibson concur.
Judgment affirmed.

. Section 1533 (subd. 5) of the former Penal Law provided:
“ Permitting use of building for nuisance.
“A person who: * * *
“5. Uses, resorts to or loiters about any stairway, staircase, hall, roof, elevator, cellar, courtyard or any passageway of a building for the purpose of unlawfully using or possessing any narcotic drug,
“ Is guilty of a misdemeanor.”