Per Curiam.

This is an appeal from an order, dated October 15, 1976 (Altman, J.), dismissing an accusatory instrument charging the defendant with loitering for the purpose of engaging in a prostitution offense, in violation of section 240.37 of the Penal Law. The court below concluded that section 240.37 is "vague, overbroad and inhibits free speech” (88 Misc 2d 590, 601). We disagree.
In relevant part, section 240.37 provides that: "Any person who remains or wanders about in a public place and repeatedly beckons to, or repeatedly stops, or repeatedly attempts to stop, or repeatedly attempts to engage passers-by in conversation, or repeatedly stops or attempts to stop motor vehicles, or repeatedly interferes with the free passage of other persons, for the purpose of prostitution, or of patronizing a prostitute, as those terms are defined in article two hundred thirty of the penal law, shall be guilty of a violation and is guilty of a class B misdemeanor if such person has previously been convicted of a violation of this section or of sections 230.00 or 230.05 of the penal law.” In enacting section 240.37, the State Legisla *756 turc was motivated by its finding that persons loitering for the purpose of prostitution, or of patronizing or promoting prostitution, disrupt the public peace in that they "harass and interfere with the use and enjoyment by other persons of such public places thereby constituting a danger to the public health and safety.” The Legislature further found that "in recent years the incidence of such conduct in public places has increased significantly in that persons aggressively engaging in promoting, patronizing or soliciting for the purposes of prostitution have, by their course of conduct in public places, caüsed citizens who venture into such public places to be the unwilling victims of repeated harassment, interference and assault upon their individual privacy, as a result of which such public places have become unsafe and the ordinary community and commercial life of certain neighborhoods has been disrupted and has deteriorated.” (L 1976, ch 344, § 1.)
At a preliminary hearing following defendant’s arrest, the court (O’Hare, J.) determined that there was reasonable cause to believe that she had violated section 240.37. The evidence at the hearing disclosed that the arresting officer observed defendant for a period of some 25 minutes at about 2:00 a.m. on July 12, 1976. During that time, defendant, who, the officer knew, had previously been arrested for prostitution, was standing near several other known prostitutes, some of whom the officer had himself previously arrested for that offense, in front of a hotel which the officer knew catered to prostitutes and their clients. The officer saw defendant on three separate occasions accost men walking along the street as part of a constant flow of pedestrian traffic. She walked up to the first man, said something to him, and touched his arm. He continued walking, and defendant returned to the building line of the hotel. She similarly approached a second man, who shook his head and continued walking. She again returned to the building line. She then approached a third man, who entered the hotel with her. When they emerged, some five minutes later, the officer had a conversation with the man, and then arrested defendant.
After defendant was bound over for trial, but before trial could be had, the court below granted her motion to dismiss the accusatory instrument.
Although characterizing section 240.37 as "vague”, the court below, in its extensive opinion, did not conclude that the terms of the statute were so unintelligible or ambiguous as *757 not to give "a person of ordinary intelligence fair notice that his contemplated conduct is forbidden” (see United States v Harriss, 347 US 612, 617). And, on this appeal, defendant specifically eschews such a claim of vagueness. However, amicus, in its brief, attempts to parse the language of the statute, and urges that its language is ambiguous. We conclude, however, that the language used in the statute is sufficiently plain as to enable persons of ordinary intelligence to understand precisely what acts are proscribed.
The primary issue on this appeal is presented by defendant’s claim, with which the court below agreed, that the statute impermissibly "places virtually unfettered discretion in the hands of the police and thereby encourages arbitrary and discriminatory enforcement” (see People v Berck, 32 NY2d 567, 571). But, contrary to defendant’s argument, and unlike the cases upon which she relies, section 240.37 does not make defendant’s guilt or innocence of the offense depend on the subjective conclusions of the arresting officer.
People v Williams (55 Misc 2d 774) and People v Berck (supra), upon which defendant places principal reliance, concerned a statute (Penal Law, § 240.35, subd 6) which declared a person guilty of loitering when he: "Loiters, remains or wanders in or about a place without apparent reason and under circumstances which justify suspicion that he may be engaged or about to engage in crime, and, upon inquiry by a peace officer, refuses to identify himself or fails to give a reasonably credible account of his conduct and purposes.”
In Williams, subdivision 6 of section 240.35 was utilized in a street-sweeping campaign against suspected prostitutes. The Criminal Court (Basel, J.), although questioning the constitutionality of the statute, since "it is the judgment of the officer and not the activity of the defendant which constitutes the crime” (p 777), nevertheless dismissed the complaints on the narrow ground of statutory construction (cf. People v Schanbarger, 24 NY2d 288).
In Berck, a closely divided Court of Appeals struck down the same statute as unconstitutional, holding that "the provision in question, containing as it does absolutely no guidelines governing the determination as to whether a person is engaged in suspicious loitering, leaves such determination solely up to the discretion of the police officer. Similarly, enforcement of the law depends entirely upon whether the arresting officer is satisfied that a suspect has given — as required by the *758 statute to avoid arrest — a 'reasonably credible account of his conduct and purposes’. As has been said with respect to such 'satisfactory account’ requirements in vagrancy statutes, 'It takes little imagination to perceive that the "reasonable account” (or "good account” or "satisfactory account”) requirement of the ordinary vagrancy law operates simply as a charter of dictatorial power to the policeman.’ * * * Thus, whether or not a suspect is hauled off to jail for suspicious loitering depends, for all intents and purposes, upon the whim of the policeman. * * * In short, the absence of any ascertainable standards governing arrest and conviction under the statute renders fair, even-handed administration of the law a virtual impossibility” (32 NY2d, at pp 571-572).
The vice of subdivision 6 of section 240.35, then, was in defining guilt of the offense in terms of circumstances justifying "suspicion” in the arresting officer’s mind. Unlike that statute, however, the statute now before us does not define guilt of the offense in terms of what is in a police officer’s mind. To the contrary, it defines the crime in terms of the acts committed by the defendant, and her purpose in committing those acts, as determined by a trier of fact. And it is just this additional element — that the loitering involves objectively determined and specified acts, or that the loitering is for an objectively determined and specified purpose — that distinguishes the loitering provisions which the courts have upheld (see People v Johnson, 6 NY2d 549 [loiters "in or about any school building or grounds”]; People v Merolla, 9 NY2d 62 [loiters "upon a waterfront facility” without "a satisfactory explanation”]; People v Bell, 306 NY 110 [loiters in a "subway” and "is unable to give satisfactory explanation of his presence”]; People v Pagnotta, 25 NY2d 333 [loiters in a building "for the purpose of unlawfully using” drugs]; People v Willmott, 67 Misc 2d 709 [loiters "for the purpose of soliciting another person to engage in deviate sexual intercourse”]), from those loitering provisions, without any specified conduct or purpose, which the courts have struck down (People v Berck, supra; People v Diaz, 4 NY2d 469 [loiters "about any street”]; see, also, People v Harris, 64 Misc 2d 510, where this court struck down a statute forbidding "fraudulent accosting” because, inter alla, the trier of fact could only determine the criminal purpose of otherwise innocent words by total reliance upon subjective expert police testimony).
Section 240.37 prohibits specified acts — repeatedly beckon *759 ing, stopping and interfering with passers-by — for a specified purpose — prostitution—all capable of determination by the trier of fact. Therefore, it is valid.
Nor does the absence of guidelines in the statute, specifically describing the means by which an officer determines whether probable cause exists to make an arrest, render section 240.37 overbroad. The law frequently imposes upon police officers the obligation of determining, at least ab initia, whether an offense is being committed, and whether conduct which might appear innocent to the layman is in fact criminal. "The superior insight into criminal activity gained by those in constant observation is not always provable by evidentiary standards. But, knowing it exists, it should not be totally ignored” (People v Meyers, 38 AD2d 484, 486; People v Tolentino, 40 AD2d 596; Smith v United States, 358 F2d 833 [Burger, J.], cert den 386 US 1008). And, a criminal statute need not specify the precise observations necessary to justify an arrest in order to pass constitutional muster.
In People v Pagnotta (25 NY2d 333, supra), defendant was convicted after trial of violating subdivision 5 of section 1533 of the former Penal Law, which provided that one who "uses, resorts to or loiters about any stairway, staircase, hall, roof, elevator, cellar, courtyard or any passageway of a building for the purpose of unlawfully using or possessing any narcotic drugs” was guilty of a misdemeanor. In the Court of Appeals, defendant contended that his guilt had not been proved beyond a reasonable doubt, and that the statute was unconstitutional.
The evidence against Pagnotta at trial was that defendant, known to the arresting officer as an addict, was seen congregating with other known addicts in a building. They had with them various implements known by the officer to be used for injecting narcotics, and Pagnotta had a clear liquid, which was not recovered.
The Court of Appeals disposed of Pagnotta’s claim that the evidence was insufficient to prove his guilt by stating that "it is hard to conceive of any other set of circumstances which would have found them closer to consummation of the act of using drugs.” The court further noted, though, that a more difficult case might have been presented as to Pagnotta’s guilt of the offense "if the defendant and his companions merely congregated without any narcotics instruments to await the *760 possible delivery of drugs which they would later possess and use” (25 NY2d, at p 339).
As far as the statute itself was concerned, the court upheld its validity, finding it to be "clear and unambiguous. It prohibits loitering or congregating for the purpose of committing a criminal act. It certainly is a reasonable legislative response to a critical problem” (ibid).
Subdivision 5 of section 1533 provides even less guidance to a police officer than the statute now before us. Like section 240.37, it does not set forth the elements to be considered by a police officer in determining whether the defendant’s "purpose” was to possess drugs. But, unlike section 240.37, it makes no reference whatever to any objectively observable specific acts. The determination in Pagnotta that subdivision 5 of section 1533 was constitutional precludes a contrary finding here.
Defendant argues that Pagnotta is distinguishable from this case because there the physical facts showed the defendant’s purpose unmistakably. But the evidence of guilt in any particular case is irrelevant to a determination of the constitutionality of the statute on its face. For, as the court held in Pagnotta, "That there may be marginal cases in which it is difficult to determine whether certain conduct is criminal is not sufficient reason to declare the language of a statute unconstitutionally vague” (25 NY2d, at p 339).
Defendant further contends that section 240.37 is unconstitutional as violative of the Fourth Amendment, arguing that prosecution under this section will necessarily involve only equivocal circumstantial evidence, so that a conviction will never be justified. Thus, urges defendant, the enforcement of the statute would constitute deprivation of liberty when no conviction is possible.
We are not persuaded, however, that a valid conviction is impossible under section 240.37. Even where evidence of guilt is wholly circumstantial, such evidence will suffice to support a conviction where "common human experience would lead a reasonable man, putting his mind to it, to reject or accept the inferences asserted for the established facts” (People v Wachowicz, 22 NY2d 369, 372; People v Borrero, 26 NY2d 430, 435; see People v Yancey, 24 NY2d 864; People v Eisen, 25 NY2d 1005; People v White, 41 AD2d 629, affd 33 NY2d 996). It must be recalled that this appeal is not before us upon a *761 judgment after trial. The People have not had an opportunity to produce all their evidence. But even upon the record now before us, we are not prepared to say that the evidence, if credited by a trier of fact, is insufficient to support a conviction.
Finally, since section 240.37 prohibits only such communication which is "for the purpose” of criminal activity, it does not infringe upon First Amendment rights (see People v Sprowal, 49 Misc 2d 806, affd 17 NY2d 884, app dsmd 385 US 649).
Accordingly, we conclude that section 240.37 is not vague or overbroad, nor does it inhibit free speech. The order appealed from is reversed, and the motion to dismiss denied.
Concur: Dudley, P. J., Riccobono and Gellinoff, JJ.