OPINION OF THE COURT
Cooke, J.
We weigh here defendant’s constitutional challenge to section 240.37 of the Penal Law (loitering for the purpose of engaging in a prostitution offense), on the asserted ground that the statute vests unfettered discretion in the police in the arrest of violators and, therefore, is void for vagueness. Additionally, it is urged that the statute is overbroad in that it inhibits the free exercise of protected rights. We reject the attack and uphold the legislation.
An ancillary but preliminary question concerns the hearing of this appeal in view of defendant’s unavailability. This criminal proceeding was commenced by the filing of an accusatory instrument on July 12, 1976 alleging that Toni Smith on that day engaged in conduct violative of section 240.37. *617 Thereafter, the New York City Criminal Court (B. Altman, J.) dismissed the complaint and declared the statute unconstitutional (88 Misc 2d 590). In turn, the Appellate Term, First Department, reversed the Criminal Court order and denied the motion to dismiss (89 Misc 2d 754). The case was reinstated in Criminal Court. Since defendant had failed to appear therein, a warrant was issued for her arrest. Although Ms. Smith is not available to obey the mandate of this court, her attorneys urge that the appeal be heard and the People join in requesting retention.
Normally and quite naturally, this court will not entertain the appeal of an absconding defendant-appellant (People v Parmaklidis, 38 NY2d 1005; People v Del Rio, 14 NY2d 165, 169; People v Genet, 59 NY 80, 82), but here a number of jurisprudential considerations militate otherwise. All sides earnestly seek a court review and determination; there are two pending civil actions in the United States District Court involving the constitutionality of the instant statute, in one of which a stay has been issued pending the disposition of this appeal (see Maggu v Carey, 76 Civ 3016 [SDNY]; Carmen v Carey, 78 Civ 438 [SDNY]); defendant’s attack is upon the accusatory instrument, she has not been tried or convicted and in these circumstances a duly authorized attorney may appear for the appellant in absentia (cf. United States v Weinstein, 511 F2d 622, 628-629); and, most importantly, the statute is still being enforced, with numerous arrests presumably occurring daily. The situation here is analogous to those of mootness or standing, where appeals are determined because the issue presented is imbued with substantial public interest, is surrounded with some uncertainity and is likely to surface again (see, e.g., People v Parker, 41 NY2d 21, 25; Matter of Carr v New York State Bd. of Elections, 40 NY2d 556, 559; People ex rel. Donohoe v Montanye, 35 NY2d 221, 224-225; Matter of Concord Realty Co. v City of New York, 30 NY2d 308, 312-313).
The class B misdemeanor of prostitution is proscribed under section 230.00 of the Penal Law which provides: "A person is guilty of prostitution when such person engages or agrees or offers to engage in sexual conduct with another person in return for a fee.” Because prostitution normally involves two willing participants and complaints by those implicated are rare indeed, section 230.00 is insufficient to meet public needs in light of the profligate spread of the world’s oldest profession *618 and its attendant evils in our central cities. Accordingly, the Legislature added section 240.37 to the Penal Law in 1976 under findings which recited:
"The legislature hereby finds and declares that loitering for the purpose of prostitution, patronizing or promoting prostitution is disruptive of the public peace in that certain persons engaged in such conduct in public places harass and interfere with the use and enjoyment by other persons of such public places thereby constituting a danger to the public health and safety.
"The legislature further finds that in recent years the incidence of such conduct in public places has increased significantly in that persons aggressively engaging in promoting, patronizing or soliciting for the purposes of prostitution have, by their course of conduct in public places, caused citizens who venture into such public places to be the unwilling victims of repeated harassment, interference and assault upon their individual privacy, as a result of which such public places have become unsafe and the ordinary community and commercial life of certain neighborhoods has been disrupted and has deteriorated” (L 1976, ch 344).
The relevant language of section 240.37 follows: "Any person who remains or wanders about in a public place and repeatedly beckons to, or repeatedly stops, or repeatedly attempts to stop, or repeatedly attempts to engage passers-by in conversation, or repeatedly stops or attempts to stop motor vehicles, or repeatedly interferes with the free passage of other persons, for the purpose of prostitution, or of patronizing a prostitute as those terms are defined in article two hundred thirty of the penal law, shall be guilty of a violation and is guilty of a class B misdemeanor if such person has previously been convicted of a violation of this section or of sections 230.00 or 230.05 of the penal law.”
An analysis of the merits of this appeal commences with a recognition of the fundamental two-part test which the due process clause imposes on a criminal statute claimed to be vague. First, it must be sufficiently definite "to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute” (United States v Harriss, 347 US 612, 617). Second, it "must provide explicit standards for those who apply them” so as to avoid "resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application” (Grayned v City of *619 Rockford, 408 US 104, 108-109). Illustrative of the application of the second phase of this inquiry, in striking down a Jacksonville vagrancy ordinance[1] as unconstitutional, the Supreme Court poignantly observed: "Those generally implicated by the imprecise terms of the ordinance — poor people, nonconformists, dissenters, idlers — may be required to comport themselves according to the lifestyle deemed appropriate by the Jacksonville police and the courts. Where, as here, there are no standards governing the exercise of the discretion granted by the ordinance, the scheme permits and encourages an arbitrary and discriminatory enforcement of the law. It furnishes a covenient tool for 'harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure.’ Thornhill v. Alabama, 310 U. S. 88, 97-98. It results in a regime in which the poor and the unpopular are permitted to 'stand on a public sidewalk . . . only at the whim of any police officer.’ Shuttlesworth v. Birmingham, 382 U. S. 87, 90.” (Papachristou v City of Jacksonville, 405 US 156, 170 [1972].)
Defendant does not declare that the statute fails to furnish adequate notice of the conduct declared to be criminal.[2] Rather, the thrust of her attack lies in her assertion that the "constitutional infirmity * * * lies in the fact that it encourages police to use unfettered discretion in making arrests solely on circumstantial evidence” requiring them to "infer criminality from wholly innocent or ambiguous activity in which free citizens must necessarily engage to lead normal lives.” Thus, the argument continues, since a police officer *620 must speculate as to the purpose of constitutionally protected activity, the statute " 'impermissibly delegates basic policy matters to policemen’ ”, forbidden under Grayned.
The strength of defendant’s assault on section 240.37 is diminished greatly by the presence therein of an element lacking in those enactments struck down and declared void for vagueness (see, e.g., People v Berck, 32 NY2d 567, 569, cert den 414 US 1093 [criminating loitering " 'in or about a place without apparent reason’ * * * under circumstances which 'justify suspicion’ that a person 'may be engaged or about to engage in crime’ ”]; People v Diaz, 4 NY2d 469, 470 [" 'No person shall * * * loiter about any street or street corner in the City of Dunkirk’ ”]). That distinctive characteristic is the delineation of specific conduct, in addition to the loitering, which the arresting officer must observe. Thus, the statute explicitly limits its reach to loitering of a demonstrably harmful sort, i.e., loitering for the purpose of committing a specific offense. The value of these additives is apparent from those decisions of this court which repeatedly have declared valid legislation prohibiting loitering in a specific place or for a specific purpose (see, e.g., People v Pagnotta, 25 NY2d 333, 335 [for purposes of unlawfully using or possessing any narcotic drug]; People v Merolla, 9 NY2d 62, 67 [on the waterfront]; People v Johnson, 6 NY2d 549, 550 [in or about any school building or grounds]; People v Bell, 306 NY 110, 113 [about railroad or subway facilities]).
Analogous to this case and pertinent to our inquiry is People v Pagnotta (25 NY2d 333, supra), where the statute under scrutiny provided that "[a] person who * * * [u]ses, resorts to or loiters about any stairway, staircase, hall, roof, elevator, cellar, courtyard or any passageway of a building for the purpose of unlawfully using or possessing any narcotic drug, [i]s guilty of a misdemeanor” (former Penal Law, § 1533, subd 5). The lifeline, clearly visible and intelligible, which saved that enactment from the fate of those struck down for vagueness was the act’s prohibition of "loitering for the purpose of committing the crime of unlawfully using or possessing narcotic drugs” (id., p 338; emphasis added). Viewed from this perspective, section 240.37, likewise, is not invalid for vagueness because it details the prohibited conduct and limits itself to one crime. As a consequence, the police are precluded from speculating or groping for violations in a Serbonian bog of ambiguous behavior which sounded the death knell for the *621 statutes condemned in Diaz and Berck. The section does not authorize an arrest or conviction based on simple loitering by a known prostitute or anyone else; rather, it requires loitering plus additional objective conduct evincing that the observed activities are for the purpose of prostitution (see People v Pagnotta, 25 NY2d 333, 338, 339, supra).
Defendant contends that in any case where there is not overheard a direct offer of sex for a fee, which in itself would be a crime (see Penal Law, § 230.00), an arrest based on 240.37 would of necessity be predicated upon proof justifying mere suspicion rather than probable cause (see People v Brown, 24 NY2d 421, 424). It might be true, as defendant claims, that in rare instances unless an officer has a basis for his belief of what is actually transpiring, based on items other than his mere observations, there would be no probable cause to make an arrest. There is also a remote possibility that a person involved in innocent conversation, such as a pollster or one seeking directions, might be arrested, but that is not envisioned by the statute and the mere fact that an officer in a particular case did not have probable cause to arrest that defendant would not warrant the invalidation of the statute (see People v Pagnotta, 25 NY2d 333, 339, supra; Roth v United States, 354 US 476, 491-492). Regardless of these possibilities under such circumstances, a conviction is not contemplated since the standard of proof would be so much greater — proof beyond a reasonable doubt of every element of the offense (CPL 70.20) and, where circumstantial evidence is relied on exclusively, the facts must be inconsistent with innocence and exclude to a moral certainty every other reasonable hypothesis (People v Montanez, 41 NY2d 53, 57). Furthermore, based on particulars obvious to and discernible by any trained law enforcement officer, it would be a simple task to differentiate between casual street encounters and a series of acts of solicitation for prostitution, between the canvas of a female political activist and the maneuvers of a Times Square prostitute.
Hypotheticals notwithstanding, the actual observances of the police and their promulgated guidelines advising of the need for probable cause, as evidenced here, lend support to the view that officials in that calling do not regard the statute as granting them an impermissible measure of discretion. At a preliminary hearing in Criminal Court (O’Hare, J.), resulting in defendant being bound over for trial, Officer Hopkins *622 testified that from an unmarked vehicle he observed defendant for about 20 minutes shortly after two in the morning standing in front of 632 Eighth Avenue in New York City, an address at which there had been numerous arrests for prostitution. In fact, the officer himself had made 15 such arrests at that location in the preceding months. During this brief interval defendant left the building line, approached three men who walked past and in each instance touched the man’s arm and said something: the first simply continued walking whereupon defendant returned to the building line; the second, with whom she walked a few feet, was seen to shake his head, as if to indicate negative response; while the third man after a brief conversation, accompanied defendant into 632 Eighth Avenue, emerging therefrom five or six minutes later. The officer asked the man what he was doing inside and, as a result of that conversation and defendant’s prior actions, she was placed under arrest.
Probable cause exists where the facts and circumstances within the officer’s knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been or is being committed (Brinegar v United States, 338 US 160, 175-176). Defendant’s observed acts, superimposed on the arresting officer’s knowledge of her previous arrest for prostitution, the general area known for its prostitution-related activities and the numerous arrests for prostitution at the spot where the operations took place, in combination furnished " 'a reasonable ground for belief of guilt’ ” — the gist of probable cause (see Carroll v United States, 267 US 132, 161). Actually, from a practical standpoint, very little more was needed to afford that reasonable ground other than defendant’s departure with the third individual into the recesses and ways of 632 Eighth Avenue.
It is noted that a number of States have upheld the constitutionality of loitering for the purpose of prostitution statutes similar to the one here (see, e.g., City of Seattle v Jones, 3 Wash App 431, affd 79 Wn 2d 626; State v Armstrong, 282 Minn 39; State ex rel. Williams v City Ct. of Tucson, 21 Ariz App 489; contra, People v Gibson, 184 Col 444). In State ex rel. Juvenile Dept. of Multnomah v D. (27 Ore App 861), the court rejected similar challenges to a City of Portland, Oregon, ordinance prohibiting loitering to solicit prostitution (Code of City of Portland, § 14.24.050), as are raised on this appeal. *623 Significantly, the Supreme Court dismissed the appeal in that case for want of a substantial Federal question[3] (D. v Juvenile Dept. of Multnomah County, 434 US 914). Of course, while that summary disposition by the Supreme Court indicates the viability of section 240.37 under the Federal Constitution, it does not insulate the statute from attack under the New York Constitution (see Oregon v Hass, 420 US 714, 719). We hold, however, that for present purposes at least, the constitutional inquiry is the same.
Finally, we reject the claim that the scope of section 240.37 has a chilling effect on the exercise of First Amendment freedoms.[4] Clearly, any criminal statute penalizes conduct and may, in the abstract, be said to impinge on speech or association in some fashion. But the protections afforded by the First Amendment are not absolute and the statute at issue here does not impermissibly sweep "within its prohibitions what may not be punished under the First and Fourteenth Amendments” (Grayned v City of Rockford, 408 US 104, 115, supra). That defendant may have employed language and the public streets to ply her trade does not imbue her conduct with the full panoply of First Amendment protections. On the contrary, the statute, by its terms, is limited to conduct "for the purpose of prostitution, or of patronizing a prostitute”— behavior which has never been a form of constitutionally protected free speech (see Broadrick v Oklahoma, 413 US 601, 615; Colten v Kentucky, 407 US 104, 111; Shuttlesworth v Birmingham, 382 US 87, 91; Cox v Louisiana, 379 US 559, 563).
Accordingly, the order of the Appellate Term should be affirmed.
*624 Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
Order affirmed.

. Section 26-57 of the Ordinance Code of Jacksonville, Florida, provided at the times in question: "Rogues and vagabonds, or dissolute persons who go about begging, common gamblers, persons who use juggling or unlawful games or plays, common drunkards, common night walkers, thieves, pilferers or pickpockets, traders in stolen property, lewd, wanton and lascivious persons, keepers of gambling places, common railers and brawlers, persons wandering or strolling around from place to place without any lawful purpose or object, habitual loafers, disorderly persons, persons neglecting all lawful business and habitually spending their time by frequenting houses of ill fame, gaming houses, or places where alcoholic beverages are sold or served, persons able to work but habitually living upon the earnings of their wives or minor children shall be deemed vagrants and, upon conviction in the Municipal Court shall be punished as provided for Class D offenses.”

. Defendant’s brief states: "Penal Law § 240.37 leaves the citizen in an untenable and constitutionally impermissible dilemma. His or her exercise of concededly innocent activity may result in arrest if any police officer decides that it fits within his interpretation of the statute.” However, a footnote at the same page declares: "Appellant has never contended that the statute is void for vagueness in the strict 'notice’ sense.”

. The Supreme Court has made plain that a dismissal of an appeal because the constitutional challenge to a State statute is not a substantial one is a decision on the merits of those issues raised in the appellant’s jurisdictional statement (Hicks v Miranda, 422 US 332, 343-345, n 14; Ohio ex rel. Eaton v Price, 360 US 246, 247 ["(v)otes to affirm summarily, and to dismiss for want of a substantial federal question, it hardly needs comment, are votes on the merits of a case”]). Examination of the jurisdictional statement in D reveals that appellant raised the self-same issues presented for our review here and indeed relied heavily on the opinion of the Criminal Court in the instant case.

. Indeed, it is doubtful that defendant even possesses the requisite standing to raise the First Amendment claim of strangers not before this court (see Broadrick v Oklahoma, 413 US 601, 610 ["a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court”]; United States v Raines, 362 US 17, 21).