OPINION OF THE COURT
Ascher Katz, J.
Complainant, under the authority of the County of Westchester Consumer Protection Code, brings this proceeding to enforce the code alleging that on November 11, 1977, in Ardsley, Greenburgh, defendant made a false and misleading representation in connection with eliminating the wetness and flooding in Joseph Wing’s basement in Cortlandt. The information alleges that defendant warranted to Wing that the work to be performed would eliminate water flooding in his basement and that if the work would fail to eliminate the wet condition, defendant would refund the amount paid, $840. The information also alleges that the complainant bought the services in reliance on the warranty, that the warranty is untrue and that on various dates after the warranty was made, water entered the basement and, after being given notice, defendant failed to perform necessary actions to eliminate the water and dampness and did not give back the $840. While the information fails to allege that defendant furnished the services, no attack is made on these grounds.
Article I (§ 102, subd 5) of the Westchester Consumer Protection Code sets forth 10 lettered subdivisions of deceptive trade practices. These include representations that goods or services have characteristics or qualities that they do not have (subd [a]), making false or misleading representations of fact or failing to state material fact concerning warranties (subd [f]), and making false or misleading representations of fact *638 (subd [h]). The full text of subdivision 5 is set forth in the footnote.*
Section 515-E of the Westchester County Charter establishes *639 the offense as a violation and for a first offense, the fine is not less than $25 nor more than $1,000 and conviction for a second offense is punishable by a fine of not less than $100 nor more than $2,500 or by imprisonment of not more than three months, or both.
By omnibus motion, defendant attacks the code as unconstitutional for violating due process in that the code is not specific enough as to give appropriate notice of the possible conduct so that such conduct may be avoided by a prospective defendant. Defendant also contends that such conduct as is described is simply the basis of a civil proceeding rather than a criminal activity. Defendant contends the statute is an ill-founded, unnecessary intrusion into the civil affairs amounting to criminalization of civil conduct and is an unconstitutional exercise of legislative power.
 This court squarely holds that the Consumer Protection Code is constitutional and a valid exercise of police power.
The purposes of the code as set forth in section 98-b of article 15-a, namely "to protect the interests of all consumers in the County of Westchester, to establish just and uniform enforcement procedures and to provide a method of administering all consumer complaints.”
The county has a legitimate interest in safeguarding and preserving the rights of its consuming citizens in their dealings with merchants and others particularly where the transaction could involve unfair practices of the seller of goods and services for personal use. Repetitive predatory practices by a particular unscrupulous merchant may be too insignificant for one individual consumer to prosecute to a civil completion. Furthermore, where smaller amounts of moneys are involved, attorneys rarely are able to devote the necessary time and effort to vigorously proceed to enforce a judgment if a civil judgment were obtained. Despite the salutary provisions in Small Claims Courts simplifying procedure and permitting swift and efficient determination of factual issues, it is common knowledge that often times the consumer gets a judgment and is unable to effectuate reduction to a money collection. The Consumer Protection Code would enable the county to enforce the public interest in protecting people from deceptive trade practices from the predatory or unscrupulous merchant or fly-by-night seller. As to the fact that the code may incidentally criminalize theretofore civil behavior, this is not *640 fatal. Police power of the State with its potential subdivisions is broad and comprehensive, and in its exercise an individual’s conduct obviously to some degree is regulated. (People v Bunis, 9 NY2d 1.) But in order for an exercise of this police power to be valid, there must be a fair and reasonable connection between such power and the promotion of the public health, safety and welfare of society. (People v Bunis, supra.)
A town may direct that garbage may not be imported for dumping into the town. (Wiggins v Town of Somers, 4 NY2d 215.)
Often practical necessities compel a legislative body to assign broad functions to an agency and to leave to it the duty of bringing about the results pointed out by the statute. For example, it may provide for the protection and promotion of the health of the inhabitants of the State. (Matter of Levine v Whalen, 39 NY2d 510.) The court pointed out there (at p 517) the following: " 'To provide for the protection and promotion of the health of the inhabitants of the state’ is sufficiently specific and clear when viewed in the light of other statutory standards which have been upheld (see, e.g., National Broadcasting Co. v United States, 319 US 190, 225-226 [" 'public interest, convenience, or necessity’ ” in establishing rules under the Federal Communications Act]; New York Cent. Securities Corp. v United States, 287 US 12 [" 'public interest’ ” regarding acquisition of one carrier by another]; Matter of Sullivan County Harness Racing Assn. v Glasser, 30 NY2d 269, 277 [" 'public interest, convenience or necessity’ ” and " 'best interest of racing, generally’ ” in issuance of licenses by State Harness Racing Commission]; Martin v State Liq. Auth., 15 NY2d 707 [" 'public convenience and advantage’ ” in issuance of liquor licenses by State Liquor Authority]; Chiropractic Assn. of N.Y. v Hilleboe, 12 NY2d 109, 119-120 [" 'matters affecting the security of life or health or the preservation and improvement of public health’ ” in respect to powers conferred upon Public Health Council]; People ex rel. Doscher v Sisson, 222 NY 387, 391 [" 'public peace, safety and good order’ ” regarding wartime sale of alcoholic beverages]; Matter of Aloe v Dassler, 278 App Div 975, affd 303 NY 878 [" 'public health, safety and general’ ” in issuance of permits by zoning board of appeals]; Matter of International Ry. Co. v Public Serv. Comm. of State of N. Y., 264 App Div 506, affd 289 NY 830 [contract not in the " 'public interest’ ”]; Matter of Rudack v Valentine, 163 Misc *641 326, 328, affd 274 NY 615 [" 'public convenience, welfare and necessity’ ” for additional taxicabs]).”
The defendant is entitled to launch a constitutional attack upon the code, but in doing so, he is required to overcome a strong presumption that legislation, duly enacted is valid. (People v Pagnotta, 25 NY2d 333; Wiggins v Town of Somers, supra, p 218.) Indeed, a court of first impression is not bound to set aside a law as unconstitutional unless that conclusion is inescapable and shown beyond a reasonable doubt by the one asserting such unconstitutionality. (Lighthouse Shores v Town of Islip, 41 NY2d 7; Matter of Van Berkel v Power, 16 NY2d 37.) A penal law is void for vagueness when it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden. For validity, a criminal statute must be informative and so explicit that all men subject to their penalties may know what acts it is their duty to avoid. (People v Berck, 32 NY2d 567.)
In interpreting a penal statute, its words are afforded their commonly accepted meaning. (People v Glubo, 5 NY2d 461.)
Defendant relies upon the dissenting opinion of Mr. Justice Frankfurter in Winters v New York (333 US 507, 524). But the quoted language is only dictum. There, the majority found that a New York State statute making it an offense to publish or distribute publications principally made up of criminal news, police reports or accounts of criminal deeds or pictures, or stories of deeds of bloodshed was unconstitutionally vague for failing to set up a sufficiently definite standard of conduct. The dictum by Mr. Justice Frankfurter in no way aids the defendant in this case. In People v Lerner (90 Misc 2d 513, 515), a distinction was drawn between statutes proscribing First Amendment rights and other rights as follows: ''So, in effect a law proscribing First Amendment rights may be attacked by any defendant who can devise a hypothetical situation that would demonstrate vagueness in the statute. This is not the case when the statute under attack deals with another topic. In this latter instance, the statute is void for vagueness only if it is vague as applied to precise circumstances of the individual case (United States v Powell, 423 US 87; United States v Mazurie, 419 US 544; United States v Raines, 362 US 17; United States v Harriss, 347 US 612; People v Pagnotta, 25 NY2d 333; People v Smith, 89 Misc 2d 789). In United States v Mazurie (419 US 544, 550, supra) the Supreme Court makes this point succinctly: 'It is well estab *642 lished that vagueness challenges to statutes which do not invoke First Amendment freedoms must be examined in the light of the facts of the case at hand.’ ”
In this case, the defendant is charged with language in the information and accompanying affidavit of the victim with sufficient definiteness as to give the defendant notice of what he is charged with and notice of the nature of his violation.
Even though more precise language may have been used in drawing the Westchester Consumer Protection Code, this in and of itself does not render it unconstitutional. (United States v Petrillo, 332 US 1; Roth v United States, 354 US 476, 491; United States v Harriss, 347 US 612, 618.)
The defendant’s motion also includes an order for a bill of particulars, discovery and inspection, a Sandoval hearing prior to trial, and dismissal by reason of police misconduct. The determination of the request for a bill of particulars, for discovery and for dismissal is set forth in separate memorandum. In particular the court directs the people to specify which lettered subdivision of article I (§ 102, subd 5) is alleged to be violated.
With regard to the Sandoval hearing, this portion of the application by defendant is granted in all respects. While the charge consists of a violation and a jury trial would not be available to the defendant, the court finds that the defendant on this record is entitled to a hearing. People v Sandoval (34 NY2d 371) holds that in the exercise of a trial court’s discretion as to the nature and extent of cross-examination of any prior convictions, a Trial Judge may make an advance ruling as to the use by the prosecution of prior convictions or proof of prior commission of specific criminal, vicious or immoral acts for the purpose of impeaching a defendant’s credibility. The Court of Appeals stated (at p 375): “As we wrote in People v. Schwartzman (supra, [24 NY2d] at p. 247): 'The rules governing the admissibility of evidence of other crimes represent a balance between the probative value of such proof and the danger of prejudice which it presents to an accused. When evidence of other crimes has no purpose other than to show that a defendant is of a criminal bend or character and thus likely to have committed the crime charged, it should be excluded.’ Thus, a balance must here be struck between the probative worth of evidence of prior specific criminal, vicious or immoral acts on the issue of the defendant’s credibility on the one hand, and on the other the risk of unfair prejudice to *643 the defendant, measured both by the impact of such evidence if it is admitted after his testimony and by the effect its probable introduction may have in discouraging him from taking the stand on his own behalf.”
The court went on to state (at p 376): "In the fact-finding process, the function, in cross-examination, of evidence of a defendant’s prior criminal, vicious or immoral acts (unless such evidence would be independently admissible to prove an element of the crime charged) is solely to impeach his credibility as a witness (People v. Webster, 139 N. Y. 73; Richardson, Evidence [10th ed.], § 498). From the standpoint of the prosecution, then, the evidence should be admitted if it will have material probative value on the issue of defendant’s credibility, veracity or honesty on the witness stand. From the standpoint of the defendant it should not be admitted unless it will have such probative worth, or, even though it has such worth, if to lay it before the jury or court would otherwise be so highly prejudicial as to call for its exclusion. The standard —whether the prejudicial effect of impeachment testimony far outweighs the probative worth of the evidence on the issue of credibility — is easy of articulation but troublesome in many cases of application.”
In reaching its conclusion that a defendant is not entitled to a Sandoval hearing in a nonjury trial, the court in People v Rosa (96 Misc 2d 491) relied on the opinion of Judge Fuchs-berg in People v Davis (44 NY2d 269). Judge Fuchsberg, in that case, did describe a jury’s natural tendency to conclude, despite limiting instructions, that a person who has committed previous crimes is either the kind of person likely to have committed the crime charged or is deserving of punishment in any event. But nowhere in the Sandoval case (supra) is there any language limiting the applicability of Sandoval to jury trials only. Indeed, the case is replete with reference to jury or court trials. People v Davis (supra) arose in the Court of Appeals following a jury trial and it would appear to this court that it was only natural that Judge Fuchsberg should discuss the jury’s tendency in the context of a jury trial. But this court does hereby state that a Judge, while perhaps more learned and trained in the law than a jury, nonetheless is susceptible to bias, emotion and all other infirmities that a jury may be subject to. It is fair to state that the split in function between the Judge and jury notably insulates the jury from the numerous items of hearsay, conjecture, argu *644 ment and outright prejudicial and inflammatory argument which often times is reserved for the court alone outside the presence of the jury. A Sandoval hearing is required even in a nonjury trial. In a nonjury trial, the court would be duty bound to disqualify itself from the fact-finding process on the charge-in-chief if, during a Sandoval hearing, the court were to find itself tainted by listening to any prejudicial or inflammatory information. It would be a simple procedure for the court to make a brief memo of this fact, disqualify itself from further proceeding in the matter, and refer the cause to another Judge for trial.
Accordingly, the defendant’s demand for a Sandoval hearing is granted in all respects.
This matter is placed on the calendar for all purposes for December 11, 1979 at 10:00 a.m.
(Recall of original decision, December 11, 1979)
Upon the court’s own motion, the original decision of this court dated November 2, 1979 is recalled to the extent of directing that the Sandoval hearing ordered therein shall be conducted by another Judge. Upon more mature consideration, it would appear that the better practice would be to have all Sandoval hearings in nonjury matters heard by a Judge other than the one who will be the trier of the facts. This will remove any question whatever as to whether or not the Judge presiding at the plenary trial had been subjected to any unfair influence during the course of the Sandoval hearing, and will serve to ensure that the fact-finding process is unaffected by any prior record of the defendant. In general, a Sandoval hearing is very brief, involves minimal expenditure of judicial time, and prevents any subtle influences in the court’s ultimate decision.
It is noteworthy that the licensing provisions under subdivision 1 of section 504 of the Vehicle and Trafile Law prohibit inspection of a driver’s certificate of conviction by any State policeman or other person including a Judge (who may view same only after conviction). The purpose of the prohibition in the Vehicle and Traffic Law is to "insure a fair hearing on the basis of the particular charge unprejudiced by past convictions (Governor’s Message, 1961 N.Y. Legis. Annual, p. 474)”. (Matter of De Vito v Aylward, 77 Misc 2d 524, 527.) There should be a similar concern for a fair hearing of all offenses.
*645 In the event that the Sandoval hearing results in the exclusion of any portion or all of the prior record of the defendant, the record of conviction of the defendant should be placed in a separate envelope marked as such within the file so that the Trial Judge will avoid viewing same prior to rendering any decision.