OPINION OF THE COURT
Timothy J. Drury, J.
The defendant has moved this court for an order dismissing the above information charging her with a violation of subdivision 2 of section 240.37 of the Penal Law on the grounds that the information is insufficient to constitute a violation of that section of the Penal Law. The defendant has also moved for an order of dismissal on the grounds that subdivision 2 of section 240.37 of the Penal Law is unconstitutional in that it is unduly vague and overbroad, and also on the ground that subdivision 2 of section 240.37 of the Penal Law is unconstitutional because it arbitrarily discriminates against persons who offer sex for money as opposed to those who do not charge money. Finally, the defendant has moved for a dismissal of this information on the grounds that subdivision 2 of section 240.37 of the Penal Law is unconstitutional because it violates the defendant’s rights under the equal protection clause of the Fourteenth Amendment because subdivision 2 of section 240.37 was *470 unconstitutionally enforced against females and not enforced against males. A hearing was held as a result of this last motion of the defendant’s to dismiss and testimony was taken at that hearing on July 17, and 18,1980.
Now upon reading the notice of motion, affidavit, and the memorandum of law of Leonard J. Klaif, Esq., attorney for the defendant, in support of said motion, and the affidavit of law ©f Joseph J. Terranova, Esq., Assistant Distict Attorney, of counsel to Edward C. Cosgrove, District Attorney of the County of Erie, in opposition thereto, and after hearing the arguments of Mr. Klaif and Mr. Terra-nova, and due deliberation having been had thereon, the court makes the following findings of facts and conclusions of law :
At about 2:50 P.M. on May 30, 1980 the defendant Crystal Burton did stop and briefly talk to a male at the corner of Chippewa and Franklin Streets in the City of Buffalo and this male did then walk away. A minute later the defendant did approach another male and she talked to him briefly and he also did walk away from her. A moment later another male came out of the Cozy Bar near the corner of Chippewa and Franklin Streets, and the defendant talked to him for a short while. He pointed up Franklin Street and walked to his car. She followed him after looking all around and got in the car. She and this third male then drove to a nearby street where she was arrested in the car by Officer Paul Madsen from the Buffalo Police Department. The arrest occurred after the male was questioned and told Officer Madsen the defendant wanted $30 for a blow job. All of the above information is alleged in the court information of Officer Madsen which is the basis for this prosecution.
The male at first told Madsen he was giving the defendant a ride home. Then he said she wants $30 for a blow job as stated above. After this Madsen let him go and only took the defendant in custody. Madsen explained this at the hearing by saying that he did not have enough to arrest the male. Officer Madsen admitted that he did not attempt to question the male any further. The explanation that he gave for not going further was that this was poor police *471 work on his part. He also said he might have stopped his questioning because he failed to give the man his Miranda rights at the very beginning.
Madsen said that he has arrested a number of male customers for violations of subdivision 2 of section 240.37 of the Penal Law, and said at times he has arrested both the male customer and female prostitute together when they are caught having sex in a car. He said he never questions suspects in prostitution-related offenses. He admitted, however, that in this case the defendant asked him to give her a break, that she said she just did 60 days at the Erie County Jail at Wende, and that her lawyer was going to kill her for getting arrested.
All in all the testimony of Officer Madsen shows that it was very likely that the male customer was given a break, and one suspects that the reason for this was that he was a male and a “John”.
The figures presented by the defendant, which Captain Kennedy of the Buffalo Police Department Vice Squad admitted were fairly accurate, show that the overwhelming number of people arrested for prostitution-related offenses in Buffalo are female (the number is at least 70% and probably closer to 90%). From these statistics one is obviously led to wonder why an equal number or nearly equal number of male customers are not also arrested, and whether this is due to some sort of bias in the enforcement of the law.
The testimony of Officer Madsen and Captain Kennedy indicates that male prostitution is as vigorously prosecuted by the Buffalo Police Department and the District Attorney’s office as female prostitution, and there are fewer arrests of male prostitutes and their customers simply because they are fewer in number than those individuals connected with female prostitution.
The testimony of Capitain Kennedy also shows that female prostitution can be as affectively deterred by the arrest of male customers as it can be by the arrest of the female prostitutes themselves.
The testimony at the hearing indicates that the reason *472 for the disproportionate number of females arrested for prostitution-related crimes as opposed to males is that the police are concentrating on the arrest of female prostitutes and not concentrating on the arrest of the male customers or “Johns”. The crux of the hearing was whether there was a valid reason for the emphasis on the one as opposed to the other.
The testimony at the hearing further shows that the best and most efficient way to arrest a male customer or “John” is through the use of a female decoy as opposed to arresting the customer for loitering when he is cruising the area, as is sometimes done.
However, the proof at the hearing indicates that the Buffalo Police Department has problems in using and fielding female police decoys to arrest the customers or “Johns”. For one thing, the Buffalo Police Department is short of manpower in general, laboring under budgetary restrictions, which cannot be easily corrected, since they are due to a shrinking tax base and other problems common to older cities. For another, the police department is guilty of engaging in discriminatory hiring practices of women in the past, it has very few women on its force, and it is now under a Federal court mandate to increase the number of women in the force. Therefore, when police decoys are needed, they must be obtained from other bureaus in the department outside the vice squad, and from the Sheriff’s Department. Women are not kept on the vice squad because they do not mesh with the other related duties of this squad, such as the prosecution of male prostitution, and of gambling and liquor law violations. Also, the use of police decoys requires additional manpower because the policewomen have to be guarded from prostitutes on the street where they are staked out and they must have additional back-up support to arrest sometimes panicky “Johns”. For these reasons, police decoys are not as readily employed against male customers as male decoys or officers are against female prostitutes. For these reasons and others, it is more efficient to use police manpower to arrest female prostitutes than their male customers. Básed on the foregoing the court makes the following conclusions of law:
*473 First, as to the defendant’s motion to dismiss on the grounds that this prosecution violated her rights as a woman under the equal protection clause under the Fourteenth Amendment, this court finds that, although the circumstances of the defendant’s arrest and the fact that almost all the people arrested in Buffalo for prostitution-related offenses are women would seem to suggest that the defendant and other women are victims of bias, a comprehensive view satisfies this court that there are good and sufficient reasons, mainly problems with manpower, to justify the police on concentrating on the arrest of female prostitutes. This court must observe, however, that what may be good and sufficient-reasons today will not suffice tomorrow when there are many more women available in the police ranks. In making this ruling the court is well aware that the defendant must bear the burden of proving that the enforcement of a law is unconstitutional and that the law in this case, like any law, is presumed to be constitutional (People v Pagnotta, 25 NY2d 333). Thus, the defendant’s motion to dismiss the information as violative of her rights under the equal protection clause of the Fourteenth Amendment is denied.
The court also denies the defendant’s other motions to dismiss the information. The court finds that the information is sufficient since all the areas described are public places and the conduct otherwise falls within that which is proscribed under the applicable and statutory case law. The court finds that the conduct proscribed is sufficiently delineated to put the public on notice and thus the law is not unconstitutionally vague or overbroad (People v Smith, 44 NY2d 613). Finally this court rules that there is a valid public interest and purpose in prohibiting sex for money as opposed to sex which is offered freely (See People v Smith, supra).