OPINION OF THE COURT
David B. Saxe, J.
On August 5, 1981, petitioner O’Quinn was convicted of the crimes of robbery in the first and second degrees and criminal possession of a weapon in the third degree. He was paroled from the Ossining Correctional Facility on January 23, 1984, *93 with an original maximum sentence expiration date of January 2, 1992. Less than eight months later, he was arrested in Queens County and charged with criminal possession of a weapon. On October 4, 1984 a parole violation warrant (No. 88987) was lodged, parole violation notices were served, and subsequently, petitioner’s parole release status was terminated. Petitioner initially waived his right to a preliminary hearing. However, on October 9, 1984, the Legal Aid Parole Revocation Defense Unit counsel assigned to represent him requested that the previously waived preliminary hearing be rescinded. Thus, a preliminary hearing was held on October 12, 1984, and probable cause was found.
A final revocation hearing set for November 7, 1984 was adjourned by the Division of Parole to December 5, 1984. Thereafter, petitioner’s counsel requested adjournment of the final hearing pending disposition of the criminal charge in Queens County. On March 12, 1985, petitioner pleaded guilty to attempted criminal possession of a weapon in the third degree and was sentenced on April 2, 1985, as a predicate felon to a new term of 2 to 4 years’ imprisonment.
Under New York Executive Law § 259-i a parole violator is not entitled to a final revocation hearing; nevertheless, counsel requested a final hearing by letter dated March 27, 1985. Counsel subsequently requested that petitioner’s warrant be vacated on the grounds that he had been denied a timely final hearing. The motion was denied by Preliminary Hearing Officer Albano in a decision dated June 6, 1985.
Petitioner contends that Executive Law § 259-i (3) (d) (iii), which denies a parolee who has been convicted of a new felony to a timely final parole revocation hearing, is unconstitutional. Executive Law § 259-i (3) (d) (iii) provides, in pertinent part: "[WJhen a parolee or conditional releasee has been convicted of a new felony committed while under his present parole or conditional release supervision and a new indeterminate sentence has been imposed, the board’s rules shall provide for a final declaration of delinquency. The inmate shall then be notified in writing that his release has been revoked on the basis of the new conviction and a copy of the commitment shall accompany said notification. The inmate’s next appearance before the board shall be governed by the legal requirements of said new indeterminate sentence, or shall occur as soon after a final reversal of the conviction is practicable.”
*94 In effect, Executive Law § 259-i revokes petitioner’s parole by operation of law, aborting any right to a final hearing. Petitioner asserts that totally denying a parolee a final hearing at any time before revocation is violative of the Federal requirements of due process.
The issue presented is whether any procedural protections for a final hearing concerning parole revocation are mandated by the due process clause of the 14th Amendment. Before determining whether a parolee is being deprived of his absolute right to liberty, it is important to briefly examine the function of parole in the correctional process. The objective of parole is to aid in the individual’s assimilation into society as a constructive citizen at the earliest time possible. In addition, parole also serves to alleviate the costs to society of keeping an individual in prison. (Morrissey v Brewer, 408 US 471 [1972].) An early release is premised on the condition that the prisoner abide by specific rules for the remainder of the sentence. Failure to comply with certain restrictions results in possibly restoring the balance of one’s sentence.
Implicit in the theory of parole is the presumption that the parolee is entitled to retain his liberty as long as he substantially adheres to the conditions upon which his parole is predicated. Whether the requirements of due process apply to parole revocations depends on the extent to which the individual will "suffer grievous loss” (Joint Anti-Fascist Refugee Comm. v Megrath, 341 US 123, 168 [1951]). In Morrissey (supra), the court found that "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss’ on the parolee” (supra, at p 482). Thus, the parolee’s right to liberty is rendered within the protection of the 14th Amendment.
We turn, therefore, to the question concerning what standard of due process must be applied to parole revocations. The minimum Federal requirements of due process owed a parolee are the following: "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached’ hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to *95 the evidence relied on and reasons for revoking parole.” (Morrissey v Brewer, supra, at p 489.)
The court, however, notes that not all situations require the same kind of procedural safeguards. (Morrissey v Brewer, supra, at p 488.)
The purpose of a final hearing is to afford the opportunity to review any contested relevant facts and consider whether the facts as determined warrant revocation. (Morrissey v Brewer, supra, at p 488.) However, the purpose of a final hearing is not to create a new forum in which a parolee may relitigate issues that have previously been determined against him "as in the situation presented when the revocation is based on conviction of another crime” (Morrissey v Brewer, supra, at p 490). It is irrefutable that petitioner, in the case at bar, was clearly in violation of parole. Inherent in a new felony conviction is the fact that a parole violation was sustained. Therefore, no risk of prejudice results from the elimination of a final parole revocation hearing in that there would be no purpose to that hearing. (People ex rel. Conyers v New York State Div. of Parole, 130 Misc 2d 33.)
Petitioner’s claim is, accordingly, devoid of legal merit. The fact that petitioner relies on prior case law which holds otherwise (e.g., Matter of Beattie v New York State Bd. of Parole, 39 NY2d 445) is inapplicable as it pertains to statutory provisions that have since been modified. It is no longer a matter left for the State Board of Parole’s discretion to decide whether parole should be revoked on a new felony conviction. Parole revocation of parole is now, under New York law, mandated by statute.
Insofar as Executive Law § 259-i (3) (d) (iii) bars the right to a final revocation hearing where the parolee has been convicted of a felony while on parole, it does not violate the due process clause of the 14th Amendment. In reviewing the constitutionality of an act of the Legislature, the courts are constrained by the strong presumption that the statute in question is constitutional (People v Pagnotta, 25 NY2d 333; see, McKinney’s Cons Laws of NY, Book 1, Statutes § 150), unless its invalidity is demonstrated beyond a reasonable doubt (Matter of Van Berkel v Power, 16 NY2d 37). Accordingly, the court shows strong deference to the Legislature’s judgment and finds no usurpation of their constitutional powers. The certificate of conviction is sufficient proof of a parole violation and as the Legislature has determined, there is no *96 need to broaden the constitutional rights afforded in such a case.